DANIEL L. CHIPMAN *et al.* v. JENNIE C. CARROLL
*et al.*

1. INSURANCE *on Mortgaged Premises—Rights of Mortgagee.* Where there
   is an agreement between the mortgagor and the mortgagee that the
   mortgagor shall keep the premises insured for the benefit of the
   mortgagee, and in fulfillment of this agreement the mortgagor takes
   out a policy of insurance in his own name, which is not assigned to
   the mortgagee or made payable to him in any way, the mortgagee is
   regarded as having an equitable lien upon the proceeds of the policy;
   and where the mortgagee obtains judgment upon his mortgage, but,
   before there is any sale or conveyance, the mortgagor takes out a
   policy of insurance in his own name, and a loss occurs before any
   sale, the mortgagee is entitled to recover the loss, as the judgment
   does not extinguish his debt.

2. HOMESTEAD—*Equitable Lien on Proceeds of Policy.* Where the hus-
   band and wife jointly execute a mortgage upon their homestead, and
   there is an agreement that the premises shall be insured for the bene-
   fit of the mortgagee, and subsequently the husband takes out a pol-
   icy of insurance upon the premises in his own name, and soon after
   a loss occurs, the mortgagee has an equitable lien on the proceeds of
   the policy, and such proceeds are not exempt upon the ground that
   the policy was upon the homestead of the parties.

3. GARNISHMENT, *When.* After a loss, the insurance company may be
   garnished where the payment of the loss is not conditional on any-
   thing remaining to be done.

### *Error from Miami District Court.*

ON June 2, 1887, *Frank S. Carroll* and wife executed a
note and mortgage for $1,500 to *Daniel L. Chipman,* and on
the same day executed a second note and mortgage for $500
to Ephraim Mower. The land described in the mortgages
then constituted the homestead of Frank S. Carroll, and the
title to the same was in him. The mortgage to Chipman
contained the following clause:

"But if default be made in such payment, or any part
thereof, or interest thereon, or the taxes, or if the insurance
is not kept up thereon, then this conveyance shall become
absolute."

Frank S. Carroll transacted the business in negotiating the

loans; and Chipman and Mower, then and ever being non-residents of this state, transacted their business through C. W. Chandler, their agent at Paola, in this state, who was afterwards succeeded by Chandler Bros., and that firm continued acting as the agents of Chipman and Mower. After the execution of the mortgage, the dwelling was insured by Frank S. Carroll, and, by clause attached to the policy, the loss, if any, was made payable to Chipman or his assigns. On November 27, 1889, judgment was rendered upon the mortgages above recited for $1,636.64, with 9 per cent. from that date, in favor of Chipman, and for $569.42, with 9 per cent. from that date, in favor of Mower, and the land ordered sold by virtue of the mortgages. On March 29, 1890, Frank S. Carroll, in his own name, negotiated insurance upon his dwelling with the People's Insurance Company, of New Hampshire, in a sum over $1,200, and with the Burlington Insurance Company, of Iowa, in the sum of $900. On April 13, 1890, the dwelling was totally destroyed by fire. On April 21, 1890, special execution was issued ordering the sale of the land to satisfy the judgments in favor of Chipman and Mower. On April 26, 1890, Chipman and Mower, by F. M. Chandler, of the firm of Chandler Bros., their agent, filed an affidavit for garnishment against the insurance companies, stating the amount of the judgments; that the same were still in full force, wholly unpaid, and not subject to any counter-claim or set-off; that execution had been issued thereon, but would not be returnable for more than 30 days; that Frank S. Carroll and Jennie C. Carroll had not property enough subject to execution to satisfy the judgments or even the half thereof; that the money due from the insurance companies was not exempt, and reciting other material facts. On the same day a garnishee summons was issued to the insurance companies and served by the sheriff, by delivering copies thereof to N. W. Wells, as the manager and agent of the companies at Paola, in this state, and by delivering a copy thereof to the defendant Frank S. Carroll, and wife. On May 10, 1890, another garnishment summons was issued, and served May 12, 1890,

by the Kansas state superintendent of insurance. On May 10, 1890, and immediately after receiving a copy of the garnishee summons, Frank S. Carroll went to Kansas City, Mo., and attempted to make an assignment of the insurance due from the People's Insurance Company to one S. Schulien. On May 27, 1890, the People's Insurance Company filed in the action its answer as garnishee, in which it stated that, by its policy No. 69,967, it insured the one-story frame building and additions of Frank S. Carroll for $1,600, and on May 23, received proofs of loss by fire of April 13; and afterward received notice of the alleged assignment to Schulien, and that it was ready to pay the $1,200 due under the policy to the party entitled to receive it. On June 4, 1890, Frank S. Carroll and wife filed their verified answer to the affidavit for garnishment, stating (1) that Mower and Chipman should not maintain their action because no general execution had been issued upon the judgments of Chipman and Mower prior to the filing of said affidavit; (2) that the property and credits sought to be garnished were the proceeds of their homestead and exempt from execution; (3) that they had assigned their claim against the People's Insurance Company to Schulien; (4) that they denied every allegation in said affidavit. On June 11, 1890, said Schulien filed his answer in said garnishment, setting up the alleged assignment to him. On June 24, 1890, a trial was had upon the matters under the pleadings. On July 16, 1890, the court decided the issue between Chipman and Mower and the People's Insurance Company, in substance as follows: "That the insurance company pay the sum due from it to the clerk of the district court for the use of said Frank S. Carroll and Jennie C. Carroll; and that, upon the payment of that sum to the clerk of this court the People's Insurance Company, garnishee, be and it is hereby discharged; and that said Daniel L. Chipman and Ephraim Mower pay the costs herein, taxed at $———." Daniel L. Chipman and Ephraim Mower excepted, and brought the case here on August 21, 1890. In the month of February, 1891, Frank S. Carroll, the principal defendant

in this case, died, and thereupon Chipman and Mower revived this case in the name of his surviving widow, Jennie C. Carroll, and her children.

*Jno. C. Sheridan,* for plaintiffs in error.

*W. H. Browne,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The judgment upon the mortgage of Frank S. Carroll and wife to Daniel L. Chipman was rendered November 27, 1889, for $1,636.64. The insurance policy which is involved in this case was obtained by Frank S. Carroll on March 29, 1890. The dwelling was burned and loss occurred on the 13th of April, 1890. The judgment rendered has not been paid or satisfied in whole or in part. The insurance company issuing the policy admitted that it was ready to pay $1,200, due under the policy, to the party entitled to receive it.

The question that we are called upon to decide in this case is, whether Chipman has an equitable claim or lien upon the money due on the policy. If there was no covenant in the mortgage or agreement between the parties that the premises would be insured for the benefit of the mortgagee, the mere fact that Chipman's mortgage covers the property insured and the insurer is personally liable for the debt gives Chipman, the mortgagee, no corresponding claim upon the policy or the proceeds of it. (1 Jones, Mort., § 401; *Lees v. Whiteley,* L. R. 2 Eq. 143; *Ames v. Richardson,* 29 Minn. 330; *Stearns v. Insurance Co.,* 124 Mass. 61.) But where a mortgage provides that the mortgagor shall keep the premises insured for

1. Insurance on mortgaged premises— rights of mortgagee.

the benefit of the mortgagee, and in fulfillment of this covenant he takes out a policy of insurance in his own name, which is not assigned to the mortgagee or made payable to him, the mortgagee is regarded as having an equitable lien upon the proceeds of the policy. (1 Jones, Mort., § 400, and cases cited.)

It was expressly ruled in *Mills v. Aldrich,* 31 Mich. 408, that

"Where the agreement to keep insurance for the benefit of the mortgagee was merely verbal, but the mortgagor had acted upon it by obtaining such insurance, and his grantee, having knowledge of the agreement, subsequently surrendered this policy, and took another, which was not payable to the mortgagee, it was held that he was nevertheless entitled in equity to have the insurance money applied in payment of the mortgage debt."

In this case the mortgage stipulated, "If the insurance is not kept up thereon, then this conveyance shall become absolute." To explain this provision, it was competent for Chipman, the mortgagee, to prove, if he could, that there was a verbal agreement between the mortgagors and the mortgagee that the insurance refered to in the mortgage was for the benefit of the the mortgagee. This agreement would not vary or contradict the terms of the mortgage. It would tend to explain the language of the mortgage and show what the parties intended thereby. Again, if there was no insurance clause in the mortgage, yet if, to obtain the loan secured by the mortgage, it was verbally agreed between the parties that insurance was to be kept up on the mortgaged property by the mortgagors for the benefit of the mortgagee as additional security, and subsequently the mortgagors, acting upon this agreement, obtained insurance, with loss payable to the mortgagee, and, after this expired, took out another policy, not payable to the mortgagee, the latter would be entitled to an equitable lien on the proceeds of the policy, if any loss by fire occurred. The court committed error in refusing to receive the evidence offered tending to show the verbal agreement, if any, at the time of the loan between the parties, concerning the application of the insurance, which was to be kept up on the mortgaged premises.

It is insisted that, as the mortgage was merged in the judgment, any agreement to keep up the insurance on the premises for the benefit of the mortgagee lapsed. The agreement to keep insurance for the benefit of the mortgagee, if any such agreement was made, was for the protection of the mortgagee, or rather, as an additional security for his debt.

The judgment did not extinguish the mortgage debt, either in whole or in part. The mortgagee, after his mortgage was merged in the judgment, was as much interested in protecting the property by insurance as prior thereto, and if the mortgagee would have had an equitable lien upon the proceeds of the policy if taken before judgment, he would clearly have a lien upon the proceeds after judgment, if no sale had taken place. It was decided in *National Bank v. Insurance Co.*, 26 Pac. Rep. (Cal.) 509, that

" Where the loss is payable to the mortgagee of the property, and occurs after sale under foreclosure, but before the time for redemption has elapsed, the mortgagee is entitled to recover the loss, as the foreclosure is no extinguishment of his debt until the deed has been made and the time for redemption has expired." (*Dunlop v. Avery*, 23 Hun, 509; *Ames v. Richardson*, 29 Minn. 330.)

The claim that the proceeds of the policy are exempt, because obtained from a policy upon the homestead, is not tenable. If the dwelling house had not been destroyed by fire, it and the premises with which it was connected could have been sold in satisfaction of the

2. Homestead— eequitable lien on proceeds of policy.

judgment, as both the husband and wife jointly executed the mortgage. If the insurance company had rebuilt and replaced the dwelling house after its destruction by fire, it could also have been sold with the premises to satisfy the judgment. The proceeds of the policy of insurance merely take the place of the dwelling house destroyed by fire, and while they would be exempt as against general creditors, they are not exempt if Chipman, the mortgagee, has an equitable lien thereon under the mortgage given by the husband and wife and the agreement, if any exists, with them to keep up insurance for his benefit. The judgment will be reversed, and cause remanded.

All the Justices concurring.