MELIA J. FITTS v. A. F. MESSICK GROCERY COMPANY.

(Filed 30 April, 1907).

1. **Principal and Surety—Extension of Credit.**—When a married wo-
man executed her note, secured by mortgage on her separate
property, for the purpose of securing a line of credit to a firm
of which her husband was a member, and such note was used as
collateral by the payee, the original note is not discharged by
renewals of the notes given by the payee.

2. **Negotiable Instruments—Extension of Payment—Agreement—
Married Women.**—An agreement contained in a note executed by
a married woman as surety, and secured by mortgage on her
separate real estate, in which there is an agreement to waive
defense by reason of extension of time to the principal debtor, is
valid and will be enforced in an action to foreclose the mortgage.

3. **Deeds—Insurance—Breach of Covenant—Subrogation.**—A exe-
cuted a first mortgage on real estate upon which a building was
located, and insured the property for the benefit of the creditor;
thereafter she executed a second mortgage, with covenant to
insure the property for the benefit of the second mortgagee, but
failed to do so; the building was destroyed by fire and the first
mortgagee paid by sale of the real estate: *Held,* that the second
mortgagee was subrogated to the rights of the first mortgagee,
and entitled to have proceeds of the policy applied to his debt.

CIVIL ACTION, tried before *Ward, J.,* and a jury, at Sep-
tember Term, 1906, of the Superior Court of FORSYTH
County.

The plaintiff sues to have cancellation of record of a cer-
tain deed in trust, executed by her to defendant D. H. Blair,
and for other relief. The facts, in regard to which there is
no controversy, are: Plaintiff, the wife of defendant J. S.
Fitts, being the owner of the real estate described in the
complaint, on 18 April, 1900, for the purpose of securing
the payment of a note for $300, payable to W. A. Walker,
executor, executed to defendant A. H. Eller, trustee, a deed
in trust, conveying said real estate. At the time of executing
said deed she took an insurance policy on the building located

on said lot, payable, in the event of fire, to said trustee, for
$300. The consideration of said note was a loan of said
amount to enable her husband to enter into business with
one Lash. On 2 October, 1901, the plaintiff, with her said
husband, executed her promissory note for the sum of $300,
payable twelve months after date to defendant A. F. Messick
Grocery Company, negotiable and payable at the Peoples
National Bank of Winston. On the same day the plaintiff,
with her said husband, executed a second deed in trust, con-
veying the same property to defendant D. H. Blair, trustee,
for the purpose of securing said note. In said deed in trust
the plaintiff and her husband covenanted with the trustee
that they would "keep the buildings on said premises insured
against loss or damage by fire for the benefit of the said
A. F. Messick Grocery Company, loss, if any, to be made
payable to D. H. Blair, trustee, as his interest may appear."
It was also provided that in case the premiums should be
paid by said trustee, or the creditors, the amount so paid
should constitute debts secured by the deed, etc. No insur-
ance policy was taken by the plaintiff, or any other person,
pursuant to said covenant.

At the time said note and deed were executed the plaintiff
did not owe the Messick Grocery Company any sum what-
ever. The purpose of executing said note, etc., is shown by
the testimony of plaintiff's husband, J. S. Fitts, who, after
testifying in regard to the execution of the note to Mr.
Walker, executor, says: "And I again applied to her to
mortgage her real estate to enable me to buy groceries from
A. F. Messick Grocery Company, to be used in the business
of Fitts & Lash, which she did, and on 2 October, 1901, we
executed our note, payable to the A. F. Messick Grocery
Company, for $300, due twelve months after date, which
was secured by a deed of trust. I took this note and mort-

gage and delivered it to the A. F. Messick Grocery Company, with the understanding, between the company and myself, that it was to stand good for a line of credit for goods to be bought from time to time, the goods to be furnished from week to week and payments to be made for the goods the week after they were purchased." Witness further testified that the firm of Fitts & Lash purchased goods from the said grocery company for two years and four months, aggregating some $1,700, and paid on account forty or fifty dollars monthly. That his wife knew nothing about the transactions, except that she mortgaged her land to enable him to buy groceries from defendant grocery company.

There was testimony on the part of defendants, which was not contradicted, that the firm of Fitts & Lash purchased goods from defendant grocery company on the credit of the note of plaintiff, beginning with a purchase of $500; that they paid bills at the end of each month, such payments being applied to the discharge of the last purchases. That at all times since the deposit of said note, and at the date of its maturity, the said firm owed, on account of such purchases, an amount equal to $300.

There was evidence showing the manner of dealing, giving short-time notes by said firm to said grocery company, which were negotiated at the bank and renewed from time to time; that plaintiff's note was deposited by Messick Grocery Company as collateral to such notes. Plaintiff insisted that by this course of dealing her note was paid, or that it operated as an extension of time, which operated to release her property. The jury found, upon an issue submitted under instructions to which no exception was taken, that the note was not paid. The question of the alleged release is presented upon the third issue, to-wit: Was the land conveyed in said deed of trust, dated 1 October, 1901, executed by

144—30

J. S. Fitts, released and discharged from the lien of Messick Grocery Company, as alleged in the complaint?

His Honor directed the jury, upon the entire evidence, to answer the issue in the negative. Prior to the institution of this action the building on the lot conveyed to the trustees was burned. The amount of the insurance was paid and, by consent of all parties interested, is held by A. F. Moses to await the determination of this case. Thereafter Mr. Eller sold the lot under the power contained in the trust deed made to him, and of the proceeds, after paying the debt secured and costs of sale, has in hand $144.22, which he holds subject to the judgment rendered in this cause. His Honor, upon the verdict, adjudged that the trustee, Eller, pay the amount in his hands to the defendant grocery company, and that Moses pay, out of the amount in his hands, proceeds of the insurance policy, a sum sufficient to discharge the balance of the note of $300 and the costs of this action, and the balance to plaintiff. The balance due defendant grocery company by Fitts & Lash is $321.55. Plaintiff excepted and appealed, assigning as error that his Honor failed: 1. To hold, as a matter of law, that the plaintiff was entitled to have the third issue answered "Yes." 2. That he held that upon all the evidence, if the jury believed the same, that the plaintiff was still liable on said note and mortgage. 3. He held that, after the exhaustion of the funds in the hands of Eller, trustee, the defendant was subrogated to the rights of the plaintiff in the insurance money held by Moses to the extent of a difference between $141 and $300.

*Watson, Buxton & Watson* for plaintiff.
*Manly & Hendren* and *D. H. Blair* for defendant.

CONNOR, J., after stating the case: The allegation that plaintiff's note was paid, is eliminated by the verdict of the

jury. The case then comes to this: Plaintiff, by her hus-
band, whose agency in that respect is not denied, deposits
her note with the defendant grocery company to secure a
line of credit to be extended to Fitts & Lash to the extent
of $300. For goods purchased in excess of that amount they
were to make monthly payments which were to be, and were,
applied to the extinguishment of such purchases. Conced-
ing that the time of payment fixed by the note marked the
limit of time for which the line of credit was to extend, it
is admitted that at that time Fitts & Lash owed, on account
of purchases made pursuant to the contract, as much as $300.
It would seem clear, therefore, that at that time the defend-
ant grocery company may have required the trustee to sell
the property and pay the balance due on the debt for which
plaintiff's note was liable.

Has the defendant grocery company, by its dealing with
the note since that time, released the property from the lien
or right to have it subjected to the payment of the debt? It
is not claimed that at any time since the maturity of the note
the debt of Fitts & Lash has been reduced below $300. It
seems that Fitts & Lash made several short-time notes to the
defendant grocery company, which were negotiated at the
bank, with the plaintiff's note attached thereto as collateral.
It is not perfectly clear that such use of the note was made
after its maturity, although we think the testimony capable
of that construction.

These notes have all been paid, and the plaintiff's note is
now the property of the Messick Grocery Company. Plain-
tiff insists that, by taking these short-time notes of Fitts &
Lash since the maturity of plaintiff's note, the defendant
grocery company entered into a valid and binding contract to
extend the time of payment of the debt for which the plain-
tiff's note was liable. The basic reason upon which a valid
contract with the principal, extending the time of payment

of the debt, discharges the surety is that it deprives the surety of the right to pay the debt and demand exoneration from the principal and an assignment of securities held by him. It is elementary that "when the engagement of the surety has become absolute by the default of his principal he may pay, without awaiting a suit, and what is thus paid, if it exceed not his legal liability, will be regarded as expended for the use, and. at the instance and request, of his principal." *Gray v. Bowls,* 18 N. C., 437. *Shepherd, J.,* in *Scott v. Fisher,* 110 N. C., 311, quoting from *Deal v. Cochran,* 66 N. C., 269, says: "It is well settled that if a creditor enter into any valid contract with the principal debtor, without the assent of the surety, by which the rights or liability of the surety are injuriously affected, such contract discharges the surety. A familiar instance of this is when a creditor binds himself not to sue or collect the debt for a given time, and thereby puts it out of the power of the surety to pay the debt and sue the principal debtor."

. It will be noted that the testimony showed that the amount due by Fitts & Lash, at the maturity of the plaintiff's note, remained a charge on the books of the defendant grocery company. It is not claimed that it was ever closed by note, and the jury find that plaintiff's note was not paid by renewals. While the transactions are not set out so clearly as might be desired, it seems that the short-time notes were given as accommodation paper to enable the Messick Grocery Company to borrow money from the bank. We do not perceive how they in any manner affected the plaintiff's right, after maturity of her note, to pay it and immediately sue Fitts & Lash for the amount so paid by her. The fact that it was deposited in the bank by the Messick Grocery Company did not affect her right to do so. It is well settled that if a collateral be deposited in a bank it may be collected at

maturity by the bank, although the debt for which it is collateral is not due. The proceeds will be held in lieu of the collateral to await the maturity of the debt. The plaintiff cannot complain that the payments made by Fitts & Lash on account of the weekly purchases were so applied. She had no equity to compel them to be applied to the $300, for which her note was deposited. This case is distinguished from *Purvis v. Carstaphan,* 73 N. C., 575. There the payments were made from the proceeds of the wife's crops. It was not within the terms of the contract, or the contemplation of the parties, that the first payments made were to extinguish plaintiff's note. It was deposited, not to secure a single bill of groceries to the amount of $300, but a "line of credit" to that amount. To hold that the note was extinguished by the first payments made would do violence to the manifest purpose of the parties. The finding of the jury that the note has not been paid excludes the suggestion that the plaintiff has been released otherwise than by an extension of time upon a valid contract. This we do not think was the effect of the dealings between the parties. His Honor, upon the entire evidence, correctly answered the third issue. Defendants insist that by the agreement, set out in the note, waiving any "defense on ground of any extension of time," etc., the plaintiff is precluded from raising the question. The plaintiff replies to this contention by saying that she is a *feme covert,* and not bound by her contract in this respect. This question has not heretofore been presented for our consideration. An agreement, incorporated in the note, to waive the defense accruing by an extension of time, has been held valid by this Court in *Bank v. Couch,* 118 N. C., 436 ; 27 Am. and Eng. Enc., 528.

In view of the decision in *Ball v. Paquin,* 140 N. C., 83, wherein we held that a contract made by a married woman,

charging, either expressly or by implication, her real estate, with the consent of her husband and by privy examination, was valid, we can see no reason why, treating the note and mortgage as one transaction, the legal effect of her agreement is not the same as if incorporated in the mortgage. It would seem both reasonable and just to treat every provision in the note as within the protection of the mortgage. It is only the property specifically conveyed for the security of the debt which is sought to be subjected. To this extent, at least, she has waived any defense which might otherwise accrue to her from the manner of dealing with the note.

The question which has given us most concern is presented by defendants' claim to have the proceeds of the insurance policy applied to the payment of the note. The policy issued to Eller, trustee, was payable to him as his interest might appear, and, while it is not expressly so stated, the legal effect of the transaction would give to the plaintiff the amount of the policy in excess of such interest; hence, as the matter has turned out, the entire amount of the insurance policy belongs to the plaintiff unless the defendant Messick Grocery Company has a right to it, either by way of an equitable lien or an equitable assignment. It is well settled that "An agreement between the mortgagor and the mortgagee, by which the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, will charge the proceeds of any insurance taken out by the mortgagor with a lien in favor of the mortgagee." 4 Cooley's Ins. Briefs, 3703 ; 1 Jones on Mortgages, sec. 400.

Where the mortgagor has covenanted that he will keep the mortgaged premises insured for the benefit of the mortgagee, and either has effected, or thereafter effects, insurance in his own name, "though this be done without the mortgagee's knowledge, or without any intent to perform the agreement,

equity will treat the insurance as effected under the agreement, and will give the mortgagee his equitable lien accordingly. This is upon the principle by which equity treats that as done which ought to have been done." *Nordyke v. Gerry,* 112 Ind., 535. In *American Ice Co. v. Eastern Trust Co.,* 186 U. S., 626, it is said: "In case of *Wheeler v. Ins. Co.,* 101 U. S., 329, it was held that when a mortgagor is bound by his covenant to insure the mortgaged premises for the better security of the mortgagees the latter have, to the extent of his interest in the property destroyed, an equitable lien upon the money due from the policy taken out by him." *Chipman v. Carroll,* 25 L. R. A., 205. The covenant of the mortgagor made it her duty to insure the property and keep it insured for the benefit of the mortgage creditor. As she then had the policy payable to Eller, trustee, with the balance, after paying the Walker note, coming to her, she might well be regarded in equity as having, in discharge of her covenant, assigned the policy, subject to Eller's interest, to Blair, trustee.

Equity, in its effort to make good one of its favorite maxims, that it will regard that as done which ought to have been done, will treat the assignment as in fact made or treat the mortgagor as holding the policy in trust for the mortgagee. "For the purpose of reaching exact justice, equity will frequently consider that property has assumed certain forms with which it ought in justice to be stamped, or that parties have performed certain duties which they ought in justice to fulfill." Bisp. Eq., 44. It is not very material upon which equitable principle we base the right. The justice of this result is manifest, in view of the fact that the building was a part, and evidently a valuable part, of the property mortgaged. When burned, if the company had, as was its privilege, restored it, the new building would have been sub-

ject to the mortgage. Why, then, should not the money paid as the price of the building stand in its stead? Any other result would permit the mortgagor to withdraw, in violation of her covenant, the value of the house from the security which she had given for the debt. As the right of the defendant grocery company to hold the proceeds of the insurance policy arises out of the covenant to insure, and not out of the right to be subrogated to Eller's rights, the question of the plaintiff's exemption as paramount thereto does not arise.

Upon a careful consideration of the entire record, we find no error in his Honor's ruling. The judgment must be

Affirmed.