## No. 28,569.

M. F. Gatton, *Appellant,* v. P. M. Harmon et al., *Appellees.*

(275 Pac. 137.)

Opinion filed March 9, 1929.

*P. H. Forbes,* of Topeka, for the appellant.

*Dennis Madden,* of Topeka, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one by M. F. Gatton to subject a ten-acre tract of land in Shawnee county to payment of a judgment. The judgment was one in plaintiff's favor and against P. M. Harmon. The record title to the land stood in the name of Katherine Medlock. Plaintiff was defeated, and appeals.

In September, 1926, plaintiff recovered a judgment for $1,000 against Harmon in the district court of Shawnee county. Harmon owned a half interest in an apartment house in Manhattan, and in October, 1926, plaintiff perfected a judgment lien on that real estate. Harmon traded his interest in the Manhattan real estate to R. Hart

for the Shawnee county tract. The trade was consummated on July 13 or 14, 1927. The Manhattan real estate was subject to mortgage, tax, and other liens. There was evidence that in the negotiations resulting in the trade, Hart agreed to satisfy plaintiff's lien on the Manhattan real estate, but the deed to Hart was not made that way. It recited that the conveyance was subject to the liens.

The counter abstract recites that the deed of the Shawnee county land was taken in the name of Harmon's daughter, Katherine Medlock. The recital is incorrect. Hart executed, acknowledged and delivered to Harmon a deed of the Shawnee county real estate, blank as to grantee. Some time afterward Harmon filled the blank space by inserting the name of Katherine Medlock. The deed was filed for record on September 17, 1927. There was evidence sufficient to sustain a finding that Katherine Medlock purchased for value.

In October, 1927, Hart paid plaintiff $100, and plaintiff delivered to Hart a release of the judgment lien on the Manhattan real estate. The release reserved judgment lien on other land of the judgment debtor and the judgment creditor's rights against the judgment debtor. The apartment house was in bad repair and heavily encumbered. Harmon derived no revenue from it, was unable to sell it for money, it had become trading property, and Harmon had only a half interest in it. But there was some evidence that his interest was of sufficient value to pay the judgment in full.

The court found plaintiff's judgment against Harmon was not satisfied, but otherwise found generally for defendants, and quieted the title of Katherine Medlock.

The counter abstract says Harmon exchanged his interest in the Manhattan property with R. Hart for the Shawnee county property. That was precisely what occurred. The counter abstract further says the exchange occurred on or about September 17, 1927. The statement is incorrect. The exchange was complete when deeds were exchanged in July, 1927. Hart's deed to Harmon was not effective as a conveyance for lack of name of the grantee, but Harmon nevertheless became owner of the Shawnee county land from the moment the deeds were exchanged. Besides being owner, Harmon had in his possession a deed which he could convert into an effective conveyance by virtue of his power to fill in the name of the grantee. As a matter of fact, pursuant to a practice of real-

estate traders, Harmon's deed to Hart was also blank as to grantee, and when the blank deeds were exchanged Hart became owner of Harmon's interest in the Manhattan real estate, just as Harmon became owner of Hart's interest in the Shawnee county real estate.

Mrs. Medlock had no dealings with Hart. She purchased of her father. The price had been advanced to her father, and the land satisfied the debt. Harmon might have made a quitclaim deed to Mrs. Medlock, which would have passed title to all the interest he obtained from Hart. (*Klopf v. Klopf*, 113 Kan. 568, 215 Pac. 827.) Harmon and Mrs. Medlock chose to complete and use the blank Hart deed as the instrument of title, but she took her father's interest in the land. When Mrs. Medlock took her father's interest in the Shawnee county land, she took it with constructive notice of the lien of the judgment, and subject to the lien.

Mrs. Medlock contends that Hart assumed and agreed to satisfy plaintiff's judgment; that Hart, therefore, became principal debtor, and Harmon became surety; that plaintiff released his judgment lien on the Manhattan real estate, which was sufficient to satisfy the judgment; and that the release discharged the surety, Harmon. The article on Suretyship in 27 A. & E. Enc. of L., 2d ed., 516, is cited in support of the contention. The text reads:

"If a creditor without the consent of the surety parts with or renders unavailable any security or fund which he has a right to apply in satisfaction of the debt, the surety is exonerated or discharged to the extent of the value of such security or to the extent of the impairment in its value."

In the same article may be found the following:

"A further qualification of the law of discharge to be made in certain cases is found in the rule that the creditor, at the time of entering into an agreement with the principal which would ordinarily discharge the surety, may reserve his rights against the surety and subsequently proceed against him. . . ." (p. 530.)

32 Cyc. 165 is to the same effect, and there is no dispute that plaintiff reserved his rights against Harmon.

In 32 Cyc. 158 appears the following:

"In order that a surety, as such, may be discharged by acts of the creditor or obligee, the latter must have knowledge of the existence of the relation; . . ."

Hart did not, in the deed to him, assume or agree to pay the judgment, and plaintiff derived no information concerning any suretyship relation from that source. Plaintiff asserts there was no evidence

that plaintiff was a party to the agreement between Harmon and Hart, and no evidence that plaintiff had any knowledge of the agreement. The abstract and counter abstract contain no such evidence. The court has read the transcript, and it contains no such evidence. The result is that Harmon was not discharged, and so far as he was concerned, plaintiff was at liberty to collect his judgment from any real estate Harmon owned subject to the lien. So far as Mrs. Medlock was concerned, she purchased with notice of plaintiff's judgment lien on the Shawnee county land.

When plaintiff procured payment of $100 on the judgment by Hart, plaintiff took a deed from Hart of the Shawnee county land. Mrs. Medlock says that constituted an election to waive the judgment. Her deed was already on record, and she was not misled or prejudiced. The mere taking of the deed did not, in law or in fact, constitute a waiver of the judgment, and the effect of the testimony on the subject was that the deed was taken to protect the judgment.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff.