No. 28,951.

Esco Houston et al., doing business as Houston Brothers, *Appellees,*
v. The American Insurance Company of Newark, New Jersey,
and The Metropolitan Life Insurance Company, *Appellants.*

(282 Pac. 577.)

Opinion filed December 7, 1929.

*W. W. Redmond, P. G. Wadham,* both' of Marysville, and *Eugene E. Bowers,* of Kansas City, Mo., for the appellants.
*Carroll Walker,* of Frankfort, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: The question involved in this case is whether a mortgagee has a right to collect and apply on the mortgage debt not yet due or in default fire insurance money on a policy taken out by the owners in addition to the one required by the mortgage, where the owners acquired title to the property since the giving .of the mortgage, by accepting a deed in which they assumed and agreed to pay the mortgage. The trial court held the mortgagee had no right to the proceeds of such policy, but that the same belonged to the present owners, from which ruling the mortgagee appeals.

There is no controversy as to facts, as they were all covered by a stipulation. The mortgage in question provided that the owner

should keep the buildings insured for $1,500 for the benefit of the mortgagee. Such a policy was procured with the usual loss-payable clause attached thereto. Subsequent to the execution and delivery of the mortgage the plaintiffs purchased the real estate in question and assumed and agreed to pay the mortgage thereon. Immediately after the purchase the plaintiffs made extensive improvements on the premises and later took out in their own names, without a mortgage clause, $2,500 additional insurance against fire and lightning, $2,000 of which was placed on the dwelling house and $500 on the farm buildings. The dwelling house was later destroyed by fire and was a total loss. The insurance company issuing both policies recognized the loss and was ready to pay, but because of demands being made by mortgagee as well as owners, it declined to pay the $2,000 to either party. The owners brought this action against the insurance company, which company brought the money into court and asked that the mortgagee be made a party defendant because of its claim. This was done and issues were joined between the landowners and the mortgagee as to their rights to this insurance money. The amount due under the $1,500 assigned policy was paid directly to the mortgagee, and is not involved in this case.

The appellant contends that the rights of the parties to this insurance money should not be determined by the provisions of the mortgage alone, which does not require the taking of this additional amount of insurance, but also by the terms of the deed of conveyance by the original mortgagor to the purchasers, by the acceptance of which they, in accordance with the provisions thereof, assumed and agreed to pay the mortgage on the real estate therein conveyed to them. Appellant reasons that by this agreement on the part of the purchasers they became principal debtors and the mortgagor became only surety, that the land became the primary security and the personal obligation secondary, and as between the mortgagor and his grantees the mortgagor would be entitled to the ordinary remedies of a surety against the principal debtor. Further, that the insurance procured by the grantees in excess of the minimum required by the mortgage inured to the benefit of the mortgagor in fulfilment of the contract of the grantees to hold the mortgagor harmless and discharged from the debt. Appellant urges that this extra insurance money is a trust fund in the hands of the grantees, standing in place of the improvements destroyed by fire, and that the principles of equity apply, which require the mortgagee to recognize the change of obligation of the original debtor to that of surety and

compel the mortgagee to pursue this equitable trust fund at the risk of being ultimately prevented from recovering from the surety any deficiency after exhausting the land for the mortgage indebtedness. Appellant presents its argument on these points under four separate headings.

We can readily accept the theory of the appellant as to the change of position of the mortgagor from principal debtor to that of surety when the purchasers by assuming the mortgage became the principal debtors, and that the holder of the mortgage could recover a personal judgment against the purchasers on such mortgage debt, but we are not pursuaded that the additional policy of insurance is a benefit inuring to the mortgagor, now surety, which he can claim to protect himself against a possible loss or deficiency. Of course, if the mortgagor could do so, it is easy to conclude that the mortgagee might do the same, by being subrogated to the rights of the mortgagor, but when the mortgage is not yet due and there is no default of any kind, why should the proceeds of such a policy inure to the benefit of anyone else than the owners any more than the wheat crop grown on the farm or the proceeds of an oil well that may have been drilled thereon? They all belong to the owners, and even a court of equity would not permit the owners to be deprived of the benefit of any such proceeds unless a breach of the terms of the mortgage should be pleaded or a deficiency and insolvency shown. Appellant concedes that it could not collect on an additional policy taken out by the original mortgagor, as was held in *Chipman v. Carroll*, 53 Kan. 163, 35 Pac. 1109, as follows:

"If there was no covenant in the mortgage or agreement between the parties that the premises would be insured for the benefit of the mortgagee, the mere fact that Chipman's mortgage covers the property insured and the insurer is personally liable for the debt gives Chipman, the mortgagee, no corresponding claim upon the policy or the proceeds of it." (p. 166.)

Appellant, however, uses this case to strengthen its theory of an equitable interest in the policy proceeds because it was therein held that the mortgagee did have an equitable lien upon the proceeds of the policy, but such lien was based upon the provisions in the mortgage that the mortgagor should take out and maintain insurance upon the property for the benefit of the mortgagee. The court went even further to say that the same rule would control if such duty was based upon a verbal promise without any such requirement in the mortgage. In the case just cited the mortgagor, in compliance with the written requirement of the mortgage, took out the policy

in his own name but did not assign it to the mortgagee, and after the loss claimed the proceeds as his own. The court held that under such circumstances "the mortgagee is regarded as having an equitable lien upon the proceeds of the policy." Appellant cites 41 C. J. 734, where it was stated:

"In the case of destruction of the mortgaged premises by fire, the duties of the mortgagee with reference to the proceeds of the insurance on the property, and their application, are the same as they would have been with reference to the property itself."

Appellant also cites *Gatton v. Harmon*, 127 Kan. 825, 275 Pac. 137, where it was held the lien of the judgment was not discharged when it was formally released before it was fully paid, where a surety was interested, as in this case, but neither of these authorities goes to the question of protecting such surety in the matter outside of the protection he had undertaken to provide for himself. In the former citation the mortgagee was authorized to go as far with reference to the proceeds of an insurance policy as it would have a right to go with reference to the property itself. How far could the mortgagee go with reference to the property itself without a default of any kind or breach of contract in any way? The mortgagee must have some basis or right to recover, either contractual or implied. Equity only assists where there is something that ought to be done for some good reason, to protect some party in his rights. The mortgagee and the mortgagor are both protected in this case as far as either of them ever proposed in any of their previous dealings. Appellant speaks of relaxing its hold on security the mortgagor took for his own indemnity and about giving up securities in the hands of the mortgagor. The stipulation gives us no enlightenment along these lines. If this policy was as security in the hands of the mortgagor, or shown to have been taken for his indemnity, there would be no question, but the stipulated facts show it to have been taken without his knowledge or connection with it in any manner, and it therefore cannot be said to have been in his hands or taken for his protection. Again, it is said it is a substitute for the dwelling which was destroyed by fire and the purchaser would not have been permitted to reduce the mortgage security by removing the dwelling from the premises, even the additions thereto placed thereon after the purchase. Of course not, but the contractual substitute for the original building has been paid to the mortgagee. The matter now in question is something more than anyone required or exacted, and was not based upon any implied contract.

Suppose when the sale was made the mortgagor had, as additional security to protect him against a possible loss, taken a chattel mortgage on the purchasers' herd of cattle, the reasoning and argument of the appellant would then be particularly applicable. It would then have been security in the hands of the mortgagor for his indemnity, but additional fire protection taken by the owners for themselves, outside of any requirement or agreement of any kind with mortgagee or mortgagor, cannot be so classed or considered, and neither the mortgagee nor mortgagor has under the stipulations and findings of the court in this case any interest whatever in, nor any legal right to claim, the proceeds of the same.

The judgment is affirmed.