Affirming.
On June 24, 1924, Herbert Turner and wife borrowed from the appellee, New York Life Insurance Company, *Page 230 
$5,500, and executed and delivered to it a mortgage on their farm to secure the payment of notes aggregating that amount executed by them as evidence of their indebtedness to the insurance company. By the third paragraph of the mortgage the Turners agreed:
 "To keep the buildings on said premises insured in some fire insurance company, approved by the mortgagee, for the insurable value thereof, with the mortgagee's regular subrogation clause attached, making said insurance payable in case of loss, to mortgagee, its successors or assigns, and deliver the policy or renewal receipts therefor to mortgagee, at least seven days before the expiration of the same."
The mortgagors procured insurance on part of the buildings on the mortgaged promises with proper clauses attached in favor of appellee. On July 27, 1926, they procured from the appellant, Northwestern Fire Marine Insurance Company, insurance on a barn located on the mortgaged premises which had not been insured theretofore, but failed to have any clause attached to the policy making the insurance payable to appellee. This barn burned on April 27, 1927.
The local agent of appellee learned of the loss and that the barn was insured by appellant, and on May 7, 1927, he wrote to appellant's local agent as follows: "Re Herbert Turner. This is to notify you that the New York Life Insurance Company has a mortgage on the property on which the tobacco barn was located, which barn I understand was insured in the Northwestern Fire and Marine Insurance Company and was destroyed by fire a few days ago. The draft in payment of the loss of this barn should be drawn payable to the said life insurance company as well as Mr. Turner." This letter apparently was referred to appellant's agents at Louisville, Ky., for on May 11, 1927, they wrote a letter to appellee's agent in which they acknowledged receipt of his letter of May 7, and advised him that they had forwarded draft in payment of the claim on April 29. It developed, however, that this draft had not been delivered to the Turners, and on May 14, 1927, appellee's local agent wrote a letter to appellant's general agents at Louisville, Ky., in which he informed them that the draft had not been delivered to the Turners, and in which he quoted the third paragraph of the mortgage executed *Page 231 
by the Turners to appellee and again requested that the draft be drawn payable to appellee as well as the Turners. On May 17, 1927, appellant's general agents replied to this letter as follows: "We are addressing Mr. Minty by today's mail, per carbon hereto, and, if the draft has not been delivered, at such time as it develops that we owe Mr. Turner this or any other amount, we will make the Now York Life Insurance Company a party to the draft. However, this is not to be construed as an admission of liability on the part of the company to Mr. Turner in connection with the above claim." On May 18, appellee's local agent replied in part as follows: "Your letter of May 17 before me. Will say that I am very glad that you have agreed to include the name of the New York Life Insurance Company in your draft when it is redrawn."
After this correspondence had passed between the agents of the two insurance companies, Turner brought suit against appellant on the policy; a dispute having arisen between them over the settlement of the loss. The suit was instituted by Turner on September 6, 1927, and the action was dismissed settled on April 5, 1928.
On April 4, 1928, appellant's general agents at Louisville sent the following telegram to appellee's local agent at Hopkinsville: "Herbert Turner declined to accept our draft with New York Life included therein. Therefore we cannot protect your interest in draft paying this claim." It seems that after the amount of the loss had been agreed upon by appellant and Turner, appellant tendered its draft payable to Turner and the New York Life Insurance Company, and Turner refused to accept it with the New York Life Insurance Company as one of the payees. On the day after the above telegram was sent, appellant delivered its draft to Turner with the name of appellee eliminated. On the day the telegram was sent, appellee's local agent was not in Hopkinsville but was in Texas on a visit, and the telegram was never delivered to him.
The Turners defaulted in the payment of their indebtedness to the appellee and it was forced to foreclose its mortgage against them. At the sale, which was adjudged in the foreclosure proceeding, the property brought less than the amount of the mortgage debt, leaving a deficiency due from the Turners to the appellee amounting to 1,158.68, and this suit was instituted by *Page 232 
appellee against appellant to recover that amount. It was successful in the lower court, and the Northwestern Fire 
Marine Insurance Company has appealed.
The suit is based on the the theory that where a mortgage provides that the mortgagor shall insure the improvements on the mortgaged premises for the benefit of the mortgagee and thereafter procures insurance which, in violation of the mortgage contract, is not made payable to the mortgagee, the latter has an equitable lien upon the proceeds of the insurance to protect it against loss, and when the fire insurance company, which has accepted the risk on the mortgaged property, receives actual notice of the existence of such a provision in the mortgage contract, it becomes bound by this equitable lien in favor of the mortgagee and is liable to the mortgagee if it ignores such actual notice and pays the proceeds of the insurance to the mortgagor.
It is a well-settled rule that where the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee the latter is entitled to an equitable lien upon the proceeds of the insurance policy, although it is made in terms payable to the mortgagor. Appellant contends, however, that before the mortgagee is entitled to an equitable lien, he must show that the mortgagor took out the particular policy with the intent to fulfill his mortgage covenant and he relies on Stearns v. Quincy Mutual Fire Insurance Co., 124 Mass. 61, 26 Am. Rep. 647.
We think the sounder rule and the one supported by the weight of authority is that such a policy is presumed to have been for the mortgagee's benefit and he will have an equitable lien upon the proceeds except against an innocent purchaser or assignee for value. This rule is based on the maxim that equity regards that as done which ought to have been done. Wheeler v. Factors' Traders' Insurance Co., 101 U.S. 439, 25 L.Ed. 1055; Farmers' Loan Trust Co. v. Penn Plate Glass Co. (C.C.A.) 103 F. 132, 56 L.R.A. 710; Ames v. Richardson, 29 Minn. 330,13 N.W. 137; Stebbins v. Westchester Fire Insurance Co.,115 Wn., 623, 197 P. 913; Kirkpatrick v. Great American Insurance Co. (Tex.Civ.App.) 299 S.W. 943; Chipman v. Carroll,53 Kan. 163, 35 P. 1109, 25 L.R.A. 308; Fitts v. Grocery Co.,144 N.C. 463, 57 S.E. 164; Nordyke Marmon Co. v. Gery,112 Ind. 535, 13 N.E. 683, 2 Am. St. Rep. 219; Hyde v. Hartford Fire Insurance Co., 70 Neb. 503, 97 N.W. 629, *Page 233 
113 Am. St. Rep. 796; Gibbes Machinery Co. v. Niagra Fire Insurance Co.,119 S.C. 1, 111 S.E. 805, 21 A.L.R. 1461; Farmers' Merchants' National Bank v. Moore, 135 S.C. 391, 133 S.E. 913, 47 A.L.R. 1001; First National Bank v. Merchants' Fire Insurance Co.,40 Idaho, 251, 232 P. 903; First National Bank v. Commercial Union Assurance Co., 40 Idaho, 236, 232 P. 899, 902.
In the last-cited case, after reviewing a number of cases including Stearns v. Quincy Mutual Fire Insurance Co., supra, the court said:
 "The rule stated by the foregoing authorities that the mortgagee's lien depends wholly upon the contract to insure, and not upon the mortgagor's immediate intent when he takes out the policy, rests upon common sense and equity. Any other rule would practically deprive the mortgagee of all recourse, and throw the doors open to wholesale fraud. As a matter of fact, any mortgagor, having covenanted to insure for his mortgagee's benefit, could take out a policy in his own name, really intending to assign it later to the mortgagee, but, upon loss of the property, could immediately change his mind, assign it to some third party without notice, and swear that such was his original intention. Conscience would demand that, so long as the policy is not in the hands of an innocent holder for value, the presumption should be conclusive against the mortgagor and all others in his shoes. He should not be permitted to flaunt his breach to his own emolument."
The rule is thus stated in 14 R. C. L. p. 1367:
 "It is undoubtedly, the general rule that a mortgagee has no right to the benefit of a policy taken by the mortgagor, unless it is assigned to him. But it is settled by many decisions in this country, that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed; and this equity exists, although the contract provides that in case of the mortgagor's failing to procure and assign *Page 234 
such insurance, the mortgagee may procure it at the mortgagor's expense."
Applying the above rule to the facts of this case, we conclude that appellee had an equitable lien on the proceeds of the policy in question and appellant, with actual notice of the lien, having paid the proceeds to the mortgagor, is liable to appellee.
It is suggested that the equitable lien created in this case is analogous to an equitable assignment and would not operate to bind the appellant, because the facts here constitute an attempt to assign part of a fund which a court of equity will not recognize when to do so will work a hardship upon the debtor. Appellant's major premise is faulty in that the assignment, which took place by operation of law, was of the entire fund representing the insurance on the barn. The policy was a dual contract and covered both the barn and specifically described personal property therein, but the two contracts, though contained in the same policy, were entirely separate and distinct — as much so as if two separate policies had been issued. The loss eventually suffered by appellee was $1,158.68, but at the time of the fire and the payment of the loss by appellant, Turner was indebted to appellee in the sum of $5,500, and it was entitled to the entire proceeds of the policy on the barn to be credited on the debt.
It is also argued by appellant that it had made a contract of settlement and compromise with the Turners before it received notice of appellee's lien. The record discloses, however, that such settlement as was made was abrogated and the Turners thereafter brought suit on the policy. A settlement was not actually consummated until April 5, 1928, almost a year after appellant had received notice of appellee's lien. After receiving 'notice of the lien, appellant agreed to include appellee's name in any draft drawn in payment of the loss and thus lulled it into a sense of security. Appellee did nothing thereafter calculated to mislead appellant and relied, as it had the right to do, upon appellant's promise to protect its interest. Appellant constituted the telegraph company its agent to deliver notice to appellee's agent that Turner refused to accept a draft with appellee's name therein as joint payee, and its agent failed to deliver the message. There is nothing in the record to indicate that appellee knew of the litigation then pending between the Turners and appellant or the status of the claim. Under the circumstances, *Page 235 
it was appellant's duty to see that appellee was afforded an opportunity to protect its rights before the proceeds of the insurance policy were paid to the insurer.
Judgment is affirmed.