MOTORISTS MUTUAL INSURANCE COMPANY, Appellant,

v.

Linda Durham RICHMOND, Individually; Melody Durham, an infant by and through her next friend, Linda Durham Richmond, for the use and benefit of Melody Durham; James Durham, an infant, by and through his next friend, Linda Durham Richmond, for the use and benefit of James Durham; and, Farmers National Bank, of Williamsburg, Kentucky, Appellees.

Court of Appeals of Kentucky.

Sept. 21, 1984.

Robert L. Milby, Hamm, Milby & Ridings, London, for appellant.

Ben K. Davis, Teague, Cox & Davis, Williamsburg, for appellees.

Before CLAYTON, McDONALD and MILLER, JJ.

CLAYTON, Judge.

Motorists Mutual Insurance Company (Motorists) appeals from a judgment of the Whitley Circuit Court awarding Linda Durham Richmond, her infant children and her mortgagee, Farmers National Bank, a total sum of $29,000.00 under the terms of a fire

insurance policy issued by Motorists to Richmond on January 12, 1982. The sole question on appeal is whether the appellees had an insurable interest in the insured property at the time of issuance of the policy and the time of the loss. We believe that they did and affirm the decision of the circuit court.

In May of 1964, Richmond married Eddie Durham. During the course of their thirteen-year marriage, she bore two children, Melody, born in 1967, and James, born in 1971. Together the couple purchased a lot and home in Whitley County, Kentucky, on October 2, 1976. The two divorced in August of 1977 under a decree, the terms of which provided for the sale of their home within six months. However, the ordered sale never occurred. Instead, Richmond and Durham attempted to reconcile their differences until March 2, 1981, at which time she and the two children moved out.

Prior to her departure, however, numerous improvements were made to the residence including repaneling the interior walls, installing new ceilings, carpeting, walkways, patio and front porch. Both individuals contributed equally to the cost of the alterations and to payment of a pre-existing mortgage on the home. Thereafter, on February 21, 1980, Richmond deeded over her legal interest in title to the property to her former husband. Approximately one year later he executed a second mortgage on the property to Farmers National Bank in the sum of $4,865.00. He subsequently died intestate of a chronic heart condition on June 18, 1981, leaving Melody and James his only heirs at law.

Immediately after her former husband's death, the widow returned to the home with her two minor children and set up residence. She began making payments on the 1981 mortgage indebtedness and continued to do so until the residence was totally destroyed by fire October 1, 1982.

Ten months prior to the loss, Richmond secured fire insurance with Motorists in the following manner. In early January she contacted Mosley Insurance Agency requesting coverage. Gene Mosley, agent for Motorists, went to the house to take pictures, make measurements, and generally inspect the premises. During his tour of the premises, Mosley requested Richmond to sign a receipt, apparently an insurance application, and asked if there was a lien against the property. Richmond replied that there was a lien but then erroneously added that it was in her name. Mosley then departed, filling out the remainder of the application himself, including checking a portion signifying that Richmond was sole owner of the home. Richmond never spoke with Mosley again until the date of the loss and she never received a copy of the application. The policy became effective on January 12, 1982, ten days before she was named administratrix of the estate of Eddie Durham.

Two months later, on March 9, 1982, Linda Richmond assumed the outstanding mortgage debt on Durham's 1981 mortgage note along with an additional debt Durham left outstanding with Farmers for the purchase of a boat. The total indebtedness of the newly executed consolidation note was $7,575.53. Linda's signature on that note appears both in her personal capacity and as administratrix of Durham's estate. The added indebtedness apparently was assumed by Linda under an added loan clause in the 1981 mortgage. Had she not executed the March 9, 1982, mortgage foreclosure proceedings would have been imminent.

Following destruction of the home, Linda presented a claim with Motorists of $15,-000.00 for personal property destroyed in the blaze and was paid $11,740.80. However, Motorists refused to make any payment for the destroyed residence claiming instead that Richmond possessed no insurable interest.

Seeking to avoid payment under the contract, Motorists would now cast Richmond as nothing more than a trespassing squatter who "surrepticiously" returned to the residence and thereafter fraudulently represented her true lack of ownership interest. Motorists would further tacitly imply that the fire was of mysterious origin by

its statement that "[a]t the time of the fire she and her new husband had moved out." We cannot accept these base characterizations. They are not supported by the record or the law.

 Linda Richmond, both before and after the death of her late former husband, made substantial monetary contribution to the maintenance and improvement of the destroyed residence. As natural guardian for her minor children, and later as administratrix of the Durham estate, she was obligated to provide for the care and custody of their offspring, including the duty to protect their home, of which the children became sole owners in fee simple by statute of descent upon the death of their father. KRS 391.010. Thus, when Richmond returned to the property following Durham's death she was not a surreptitious trespasser. Her offspring and she as their guardian were fully entitled to use and dominion over the premises. While not possessed of title, Richmond certainly possessed an insurable interest in the residence; first, by her status as natural guardian for the protection of her minor children's interest; and second, by her extensive pecuniary investment in the residence. Alabama case law notwithstanding, Richmond's situation is identical to that found in *McElrath v. State Capital Insurance Co.*, 13 N.C.App. 211, 184 S.E.2d 912 (1971). In *McElrath*, the insurer, State Capital Insurance Company (State Capital), issued a three year policy of fire insurance on McElrath's home in October of 1967. On January of 1970 the widow's residence was destroyed by fire. McElrath timely submitted a claim with State Capital which denied coverage, in part due to McElrath's supposed lack of an insurable interest. The Court of Appeals of North Carolina quickly dispensed with the defendant insurer's argument stating,

> Defendant contends that the court should have granted its motion for a directed verdict for the reason that plaintiff had no interest in the property capable of being insured. The deed to the property was in the name of plaintiff's

husband who died intestate in 1946 leaving plaintiff and six minor children surviving. Since that date plaintiff has been in possession of and has exercised dominion over the property. She has paid all taxes, kept the property insured and made all repairs. There is no suggestion of fraud or that defendant assumed any risk it did not intend to assume when it issued the policy. 'In general, it is well-settled law that a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against.'

*Id.* at 913. *See also Aetna Ins. Co. v. Foster*, 43 Ga.App. 658, 159 S.E. 882 (1921).

 Nor does the present record contain any suggestion of fraud or unwitting assumption of risk by Motorists. Richmond made no claim of ownership to the residence. Her only direct action with regard to the so-called "receipt" was to place her signature upon it. Motorists' own agent, Mosely, was responsible for completing the remainder of the document including the portion indicating Richmond's ownership. Had he so chosen, he could have easily verified his assumptions concerning Richmond's ownership simply by calling Farmers State Bank. It is a well settled principle of law in this state that an insurer as

> principal is bound by the acts of his agent within the scope of his apparent authority, though his authority may in fact be limited, if the person dealing with him is ignorant of the limitation upon his authority. Few persons understand insurance who have not made it a special study. The agent who comes to get the insurance is the only person they deal with or know in the transaction. The rule that he represents the company and not the insured in taking the application is just and is generally recognized.

*Hurst Home Ins. Co. v. Ledford,* 207 Ky. 212, 215, 268 S.W. 1090 (1925). Thus, the burden of any error in the nature of Richmond's insurable interest, rather than its existence, falls upon Motorists via the actions of its agent.

■ Motorists is further obligated to make payment by the definition provisions of its policy. Under that policy "insured" is defined as

> You and the following representatives of your household:
> a. your relatives
> b. *any other person under the age of 21 who is in the care of any person named above.* (our emphasis)

At the time of issuance of the policy, Linda's children, Melody and James, were each, by statute of descent, fee simple owners of an indivisible one-half interest in the residence. As minors under the age of 15, neither child was legally capable of contracting for insurance in his or her own behalf. KRS 391.010. Therefore, absent Linda's efforts in securing insurance, neither Melody nor James could have directly protected his or her ownership interest in the home. By defining the terms of its policy so as to include the ownership interest of the children, Motorists undertook exactly the risk it bargained for and should not now be able to successfully deny payment. In this respect no liberal construction of the policy of insurance is necessary to protect the insured. *See Koch v. Ocean Accident & Guaranty Corporation Ltd.,* 313 Ky. 220, 230 S.W.2d 893 (1950). The contract speaks for itself.

■ Having determined that both Richmond and her children possessed an insurable interest in the residence throughout the life of the policy, we turn now to the interest of Farmers State Bank under the policy. Motorists maintains that Linda's absence of an insurable interest defeats Farmers' claim under the loss payable clause of the policy. Given our prior holding, we cannot accept Motorists' arguments in this respect. Motorists would fur-

ther argue, however, it is not liable for the principal amount of the consumer note executed by Richmond on March 9, 1982, as the loss payable clause of the policy applies only to a mortgage in existence at the time the policy is issued. We do not disagree with that general principle. The problem with this argument, however, ignores several material facts surrounding the execution of the note. The note of March 9, 1982, included the principal indebtedness of the March 2, 1981, note and a subsequent loan for the purchase of a boat made by Farmers to Durham prior to his death. Both of the notes were secured by the mortgage accompanying the 1981 note, the second note having fallen under "the additional loan clause" of that mortgage. Richmond was required by Farmers, following the death of Durham, to execute the 1982 consolidation note in her personal and fiduciary capacity or face foreclosure proceedings on the residence involved. Under these facts it becomes evident that the later note is merely a continuation and consolidation of the earlier two notes, both of which were secured by the 1981 mortgage, itself in existence at the time of the policy. Therefore, the general principle stated above is not violated by the requirement that Motorists pay the principal amount of the March 9, 1982, note plus interest. The mortgage, as security for that note was not subsequently acquired. *See Northwestern Fire & Marine Ins. Co. v. New York Life Ins. Co.,* 238 Ky. 229, 37 S.W.2d 67 (1931).

The judgment of the Whitley Circuit Court is affirmed.

All concur.