In re James Clay MOORE, Ann H. Moore, Debtors.

ORMOND WHOLESALE COMPANY, INC., Plaintiff,

v.

James Clay MOORE, and wife, Ann H. Moore, Debtors, Richard M. Stearns, Attorney for Debtors, Defendants.

Bankruptcy No. S–84–00194–4. Adv. No. S–85–0228–AP.

United States Bankruptcy Court, E.D. North Carolina.

Nov. 6, 1985.

---

Richard M. Stearns, Kinston, N.C., for debtors.

W.H. Watson, Greenville, N.C., for Ormond Wholesale.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

This adversary proceeding was brought by Ormond Wholesale Company, Inc., ("Ormond"), against the chapter 11 debtors in possession, James Clay Moore and Ann H. Moore, to impress an equitable lien on possible proceeds of an insurance policy. The trial was held in Raleigh, North Carolina, on October 22, 1985.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O), which this court may hear and determine.

## FACTS

The basic facts are both uncomplicated and undisputed.

Mr. and Mrs. Moore ran a store (Moore's Clover Farm Store) in Lenoir County, North Carolina, and Ormond supplied inventory. When the Moores' open account with Ormond became too large, Ormond requested that the indebtedness be secured by the store, the inventory, and equipment.

On May 19, 1983, Mr. and Mrs. Moore executed a promissory note in favor of Ormond in the principal amount of $199,-448.80, plus interest. As security for the note the Moores also executed a Deed of Trust and Security Agreement which encumbered the store, the equipment, and the inventory. The deed of trust was properly recorded in the Lenoir County Registry and the security interests in the personal property were properly perfected by financing statements filed with the North Carolina Secretary of State Office and with the Register of Deeds for Lenoir County.

The Deed of Trust and Security Agreement provided that the Moores were required to obtain insurance for the building (First Paragraph of Deed of Trust) and for the personal property (Second Paragraph of Security Agreement). The Moores were required by the terms of the Deed of Trust and Security Agreement to see that any loss under the policy covering the personal property be payable to Ormond—there was no similar loss payable requirement relating to the policies covering the building.

Mr. and Mrs. Moore already had a $600,-000 insurance policy which covered both

the building and personal property in effect at the time the Deed of Trust and Security Agreement was executed. The Moores did not understand the need to add Ormond to the policy, and Ormond was never named as a loss payee. As luck would have it, the building was destroyed by fire on August 17, 1983, and Mr. and Mrs. Moore filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 3, 1984. Ormond contends that it should have an equitable lien on any insurance proceeds to the extent of the amount outstanding under the note—$221,605.78, plus interest at the rate of 4% per annum from March 29, 1984.

## DISCUSSION AND CONCLUSIONS

In the absence of a loss payable clause in a fire insurance policy, the proceeds of the policy should be paid to the individual who entered into the insurance contract. *Forsyth County v. Plemmons*, 2 N.C.App. 373, 163 S.E.2d 97 (1968).

The mere existence of the mortgage relationship does not in itself entitle the mortgagee to all or any part of the proceeds of insurance procured by the mortgagor. The mortgagee has no interest in the proceeds unless he is named in some way in the contract of insurance or in the mortgage as being entitled to the proceeds of the insurance, or unless the policy has been assigned to him, or the mortgagor has agreed with him that he is entitled to the proceeds, or the mortgagor agreed to procure the insurance for his benefit.

Conversely, the proceeds of a policy taken out by a mortgagee on his own interest in property and paid for by him do not inure to the benefit of the mortgagor, nor does payment thereof to the mortgagee discharge the mortgagor's debt. 5 *Couch on Insurance 2d* (Rev. ed.) § 29:64 (1984).

If the mortgagor, however, has agreed to provide insurance for the benefit of the mortgagee, the mortgagee is given an equitable lien on the proceeds of the insurance notwithstanding the absence of a loss payable provision in the policy. 5 *Couch on Insurance 2d* (Rev. ed.) § 29:83 (1984).

. . . . [A]s a rule a mortgagee has no right to the benefit of a policy taken by the mortgagor, in the absence of an agreement to this effect, unless the policy is assigned to him; but where the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, as between the parties to the contract the mortgagee is entitled to an equitable lien on the proceeds of the policy obtained by the mortgagor. *Wayne National Bank of LaGrange*, 197 N.C. 68, 70, 147 S.E. 691 (1929). See also, *Fitts v. A.F. Messick Grocery Company*, 144 N.C. 463, 57 S.E. 164 (1907).

Clearly, the equitable lien created in the proceeds is enforceable between the parties, but may it be enforced against the debtors in possession? The answer to that question should be decided under state law. *Angeles Real Estate Company v. Kerxton*, 737 F.2d 416 (4th Cir.1984). In *Angeles*, the Fourth Circuit Court of Appeals held that the beneficiary of an equitable lien could recover from a trustee in bankruptcy because, under the law of Maryland, a judgment lien creditor takes subject to equitable charges against the debtor.

The general rule in North Carolina is that equitable liens are not given priority over the claims of third party purchasers for value *without notice*. *M & J Finance Corporation v. Hodges*, 230 N.C. 580, 55 S.E.2d 201 (1949). Nor are equitable liens recognized "as to a receiver representing general creditors of a receivership estate," unless the "equities" take the case out of the general rule. *Eno Investment Company v. Protective Chemical Laboratory, Inc.*, 233 N.C. 294, 297–298, 63 S.E.2d 637 (1951).

There is authority in the Fourth Circuit that an equitable interest which could prevail over the interest of a purchaser with *actual notice* of the interest will also prevail over a debtor in possession even though a debtor in possession has all of the rights of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a) (e.g., rights of a

judicial lien creditor and subsequent *bona fide* purchaser for value—11 U.S.C. § 544(a)). *In re Hartman Paving, Inc.,* 745 F.2d 307 (4th Cir.1984).

Based on the holding in *Hartman,* the Moores' agreement to provide insurance to Ormond would survive, and Ormond's equitable lien could be enforced against the debtors in possession.

But even without *Hartman,* this court is convinced that based on the "equities" involved, Ormand's equitable lien should be given priority over the claim of the debtors in possession under the law of North Carolina.

The obligation on the part of the debtors to provide insurance to protect Ormond's security was a conspicuous part of the recorded Deed of Trust and Security Agreement. Any purchaser of the real property would take the property subject to the deed of trust and the obligations contained therein. As far as notice to third parties goes, by recording the Deed of Trust and Security Agreement Ormond did everything that was required. *Matter of Mitchell,* 55 B.R. 700 (D.C.E.D.N.C.1985). The legal lien from which Ormond's equitable rights arise was properly perfected in every respect and no parties were prejudiced by the absence of a loss payable clause in the policy. *Matter of Rettig,* 32 B.R. 523 (Bankr.D. DE 1983). 11 U.S.C. § 541(d) provides that if the debtor holds only legal title, but not equitable title as of the commencement of the case, the debtor's interest becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. *In re Dahlquist,* 34 B.R. 476 (Bankr.D.S.D.1983); *In re Flight Transportation Corp. Securities Litigation,* 730 F.2d 1128 (8th Cir.1984); *In re Engleby,* No. S-83-00902-4 (Bankr.E.D. N.C. Oct. 21, 1983); and 4 *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1983).

There is yet another reason why Ormond should have a prior claim to the proceeds of insurance for personal property. Under the Uniform Commercial Code, as adopted in North Carolina, "insurance payable by reason of loss or damage to collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement." (N.C.GEN. STAT. § 25-9-306(1)), and a properly perfected security interest in the damaged collateral will continue in the insurance proceeds. (N.C.GEN.STAT. §§ 25-9-203(3) and 25-9-306(2)).

Based on the foregoing, judgment shall be entered establishing the priority of Ormond's equitable lien to the insurance proceeds to the extent of $221,605.78, plus interest as provided in the note.