## In re ISLAND HELICOPTER CORP., et al, Debtors.

Bankruptcy Nos. 884–40672–18 to 884–40681–18.

United States Bankruptcy Court, E.D. New York.

July 30, 1986.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for debtors.

Cullen & Dykman, Garden City, N.Y., for Long Island Trust.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Long Island Trust Company, N.A. (hereinafter "Trust"), has moved for an order conditioning the debtor's use of eight helicopters on the adequate protection of Trust's security interests in these aircraft, pursuant to 11 U.S.C. § 363(e). Trust also seeks to preclude the debtor's proposed use of certain insurance proceeds to purchase new helicopters, or in the alternative, to condition the proposed use of such proceeds on additional adequate protection.

The debtor has proposed to offer Trust adequate protection for Trust's security interest in seven of the eight helicopters specified in Trust's motion. The debtor disputes Trust's inclusion of an eighth helicopter in the instant motion and contends that Trust inappropriately asserts its security interest in this helicopter. In addition, the debtor argues that Trust's security interest in the collateral does not extend to the subject insurance proceeds.

## FINDINGS OF FACT

1) The debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on April 19, 1984.

2) The debtor is in the business of providing charter and contract helicopter services, and operates and maintains a fleet of helicopters in the course of this business.

3) A helicopter apparatus constitutes an amassment of approximately 70 major components that enable the aircraft to be utilized for its intended purposes. The Federal Aviation Administration (hereinafter "FAA"), in conjunction with the manufacturer, assigns each component a specific time-life that is measured in terms of actual flight hours. Upon the expiration of a component's time-life, the component must either be replaced by a component with remaining time-life, or overhauled; as a result, components are manufactured to be interchangeable among similar aircraft as such need arises. The individual helicopter constructed from these requisite components is identified by a data plate on which the manufacturer inscribes an identifying serial number. Examples of these components include the airframe, pod shell, engines, transmission, drive shaft, rotor blades, aircraft stabilizers, and landing gear.

4) In 1975, the debtor gave Trust a security interest in a Bell 206B helicopter, Serial No. 1229, Registration No. N4FL (hereinafter "Bell N4FL") to secure a loan of $209,574. In 1976, the debtor offered Bell N4FL, along with six other helicopters, as collateral to Trust for an indebtedness of $468,000. Trust duly recorded the chattel mortgages and security agreements for these transactions with the Aircraft Registration Branch of the FAA in Oklahoma City, Oklahoma.

5) A security agreement between the parties dated February 14, 1975 granted Trust a security interest in Bell N4FL for all future obligations of the debtor to Trust. The security agreement contains no provision that relates to Trust's release of its lien.

6) The debtor has repaid in full the two loans from Trust pertaining to Bell N4FL, as recited in Finding No. 4, *supra*.

7) Trust has refused to accede to the debtor's requests to release the lien Trust holds on Bell N4FL.

8) In 1985, Bell N4FL was totally destroyed in a crash that occurred during use in Connecticut. The debtor is presently in possession of the data plate for Bell N4FL.

9) The debtor has historically self-insured the Bell helicopters in its fleet. This policy is predicated on the economies to the debtor of incurring the costs of rebuilding these aircraft as compared to the costs of obtaining insurance for them. The debtor apprised Trust of this policy, and Trust never requested that the debtor deviate from this course of action.

10) From 1977 to 1982, the debtor pledged to Trust certain collateral as follows:

a) two Sikorsky S–58T helicopters: one, Serial No. 58–1630, Registration No. N2657Z (hereinafter "Sikorsky N2657Z"), and the other, Serial No. 58–1514, Registration No. N26567 (hereinafter "Sikorsky N26567"), to secure an indebtedness of $900,000;

b) one Aerospatiale SA–360C helicopter, Serial No. 1006, Registration No. N49505 (hereinafter "Aerospatiale N49505") to secure an indebtedness of $750,000;

c) one Aerospatiale SA–360C helicopter, Serial No. 1029, Registration No. N360CP (hereinafter "Aerospatiale N360CP") to secure an indebtedness of $600,000;

d) one Aerospatiale AS–355E helicopter, Serial No. 5042, Registration No. N57818 (hereinafter "Aerospatiale N57818") to secure an indebtedness of $594,395.52;

3) one Bell 206L helicopter, Serial No. 46610, Registration No. N16959 (hereinafter "Bell N16959") to secure an indebtedness of $341,000;

f) one Bell 206L helicopter, Serial No. 45101, Registration No. N16696 (hereinafter "Bell N16696") to secure an indebtedness of $453,280.80.

In addition, the debtor pledged Bell N16959 and Bell N16696 as collateral to

secure any future obligations to Trust incurred by the debtor.

11) In December, 1983 at Newark Airport, New Jersey, Aerospatiale N360CP crashed subsequent to takeoff. Many of this helicopter's major components were destroyed on impact, including the rotor blades and mast, transmission, engine, and tail rotor and rotor gear box. The helicopter's pod component sustained only minor structural damage.

12) The debtor utilized Aerospatiale N306CP's pod component and accompanying minor components to rebuild another Aerospatiale helicopter, Registration No. N213EH, not held by Trust as collateral. The debtor exercised sound business judgment and decided that the transfer of these components from Aerospatiale N360CP to the other aircraft would return a usable helicopter to the debtor's fleet in the most expeditious manner. As of the date of this hearing, the debtor had commenced the procurement of components to rebuild Aerospatiale N360CP.

13) In 1985, Aerospatiale N49505 was substantially destroyed when it crashed into the East River after its takeoff from the 34th Street Heliport, New York City.

14) The security agreements between the parties pertaining to Aerospatiale N49505 and Aerospatiale N360CP obligated the debtor to insure these aircraft as follows:

2. Debtor shall: ... keep the collateral insured in an amount not less than the sum secured by this agreement against loss and damage by fire, theft and such other risks as Secured Party [Trust] may require, with the policy(s) made payable to Secured Party as its interest may appear; and give immediate written notice to Secured Party of any loss or damage to the Collateral.

Where the debtor failed to obtain insurance, Trust was empowered to acquire insurance for the collateral and charge the debtor for the costs thereof. The debtor further agreed to assign to Trust all insurance proceeds due under any policy insuring the collateral. Trust also retained control over the disposition and use of any such insurance proceeds. Trust failed to include these security agreements in its filings with the FAA.

15) Trust did not require the debtor to obtain insurance for any particular risk to the collateral beyond loss and damage for fire and theft. Similarly, Trust did not exercise its option to acquire insurance for the collateral and charge the debtor accordingly.

16) The debtor obtained hull insurance with a 5% deductible on all helicopters that it did not self-insure. Proceeds under such policies were to be paid to the debtor upon the partial or total destruction of the insured aircraft. With regard to the insurance policies the debtor obtained for Aerospatiale N360CP and Aerospatiale N49505, neither policy named Trust as loss payee nor otherwise directed that insurance proceeds payable under the policies were to be paid to Trust.

17) In February, 1984, the debtor received insurance proceeds for the damage to Aerospatiale N360CP in the amount of approximately $470,000. The proceeds were thereafter included into the debtor's general operating bank accounts that it maintained with Trust.

18) The debtor received insurance proceeds for the destroyed Aerospatiale N49505 in the amount of approximately $525,000. These funds were also placed into the debtor's general operating bank accounts.

19) Five helicopters held by Trust as collateral are currently being utilized by the debtor: Sikorsky N2657Z, Sikorsky N26567, Aerospatiale N57818, Bell N16959, and Bell N16696. These helicopters are being maintained in accordance with FAA regulations and industry standards. These aircraft are also regularly serviced under the debtor's maintenance program.

20) Patrick Mallen is Vice-President of Technical Services for the debtor. This court recognizes Mr. Mallen's considerable talents and abilities in the field of helicopter maintenance. During the pendency of

the debtor's reorganization, Mr. Mallen has upgraded and redesigned the debtor's helicopter maintenance program to increase efficiency and cost effectiveness. The changes Mr. Mallen has instituted include: the writing of maintenance operations manuals; the design of work tools which cannot be readily or economically purchased by the debtor; and, the design and construction of refurbished interiors for the helicopters. In addition, Mr. Mallen has secured for the debtor from many manufacturers permission to fabricate and overhaul component parts that the debtor would otherwise be required to purchase at greater cost.

21) Since April, 1984, the debtor has expended approximately $2,400,000 on regular maintenance for the collateral. The debtor represents that this sum includes expenditures for major components in the amount of $1,029,625.26.

22) Barry Desfor is the general manager and chief appraiser of Helicopter Financial Services, Inc., publisher of the official helicopter "blue book" that provides statistical information as to the worldwide values of various helicopter makes and models. In August of 1984 and 1985, Mr. Desfor appraised the collateral for Trust.

23) In appraising the collateral, Mr. Desfor physically examined the helicopters and reviewed the debtor's maintenance records. This review included the spot-check of component history cards to determine the time-lives of major components, and a comparison of the component serial numbers listed in the records with those of the components actually installed in the respective helicopters.

Mr. Desfor then assigned a value to each component of an individual helicopter. This value represented a worldwide statistical average for similar components and disregarded variations in value attributable to fluctuating costs of labor and parts. The value at which Mr. Desfor appraised a helicopter thus constituted an aggregate of the values of that helicopter's components. These appraisals also considered past sales of similar makes and models of helicopters where possible and appropriate. However, the appraisals by Mr. Desfor specifically did not project the value that a potential purchaser might pay for the collateral.

24) The value of a helicopter fluctuates over time and is a function of the time-life of its components and the quality of its maintenance, including component overhaul and replacement. Appraised evaluations of helicopters generally evince significant price differentials to reflect the variables affecting the aircraft's value. Consequently, an appraisal which assigns a specific value to a particular helicopter is ineffective after approximately 100 flight hours or 60 days.

## DISCUSSION AND CONCLUSIONS OF LAW

■ A debtor-in-possession may use property of its estate in the ordinary course of business without notice and a hearing. 11 U.S.C. § 363(c)(1). Where property secures an outstanding debt to a creditor, a court may condition such proposed use on a debtor's adequate protection of its secured creditor's interest in the property. 11 U.S.C. § 363(e). Adequate protection safeguards against a decrease in the value of an interest in the collateral that is attributable to the proposed use. 2 Collier on Bankruptcy § 363.06 at 363–29 (1986). A debtor does not enjoy unfettered use of that property of the estate encumbered by a creditor's security interest.

The debtor offers Trust adequate protection in the following manner: the continued maintenance and upkeep of the collateral; replacement liens on new components installed in the collateral; replacement liens on new aircraft to substitute for that collateral which has been totally or partially destroyed in accidents; and, insurance policies on all of the collateral excluding the Bell helicopters that name Trust as loss payee. The debtor disputes Trust's inclusion of Bell N4FL in its request for adequate protection under Section 363(e). The debtor posits that Trust's security interest in Bell N4FL extinguished upon the debtor's full repayment of the loans noted in Finding No. 4, *supra*. For this reason,

Bell N4FL is not considered in the debtor's adequate protection proposal.

The debtor gave Trust a security interest in Bell N4FL for all future obligations as contemplated between the parties. Trust duly recorded the documenting chattel mortgage and security agreements with the FAA. Where a mortgage is given as continuing security for future loans, and future loans are within the parties' contemplation, the mortgagee's lien is not extinguished when the mortgagor reduces the specified indebtedness to zero. *In re Cichanowicz*, 226 F.Supp. 288, 291 (E.D.N.Y. 1964); *see generally*, 53 N.Y.Jur., Secured Transactions, §§ 235, 236 at 611–13 (1967). Accordingly, Trust presently maintains its security interest in Bell N4FL as additional collateral for loans made to the debtor after 1977. Trust has properly included Bell N4FL in its motion for adequate protection.

Trust maintains that adequate protection in this case must compensate for its lost opportunity of asserting foreclosure rights in the collateral and thereafter reinvesting the foreclosure proceeds. Trust cites to *In re American Mariner Industries, Inc.*, 734 F.2d 426, 12 B.C.D. 227, 10 C.B.C.2d 910 (9th Cir.1984), which held that an undersecured creditor subject to the automatic stay is entitled to compensation for the present value of its right to foreclose.

This court's decision in *In re Island Helicopter Corp.*, 63 B.R. 809 (Bkrtcy.E.D.N.Y. 1986) rejected an undersecured creditor's argument that Congress intended adequate protection, as outlined in Section 361, to compensate for lost opportunity cost. This court narrowly interprets the phrase "indubitable equivalent," utilized in Section 361(3), to afford a court greater flexibility in protecting the secured creditor from the undue devaluation of its collateral during the operation of the automatic stay. *Id.* at 817. Moreover, this court refuses to render a judgment that would effectively permit the accrual of unmatured post-petition interest to an undersecured creditor. *Id.* at 818.

In dicta, this court further noted that even the *American Mariner* interpretation of Section 361(3) does not entitle an undersecured creditor to compensation for lost opportunity cost in every instance. *Id.* at 818, *In re Peach State Distributing Co.*, 58 B.R. 873 (Bkrtcy.N.D.Ga.1986). Adequate protection is a flexible concept that attempts to preserve the value of a creditor's bargained-for rights in accordance with the particular circumstances of the case. *In re American Mariner Industries, Inc.*, 734 F.2d at 435.

On an individual case basis, the court must ascertain a creditor's interest in the collateral and then determine adequate protection for that interest. H.R. No. 95–595, 95th Cong., 1st Sess. 338–40 (1977), S.R. No. 95–989, 95th Cong., 2d Sess. 53–54 (1978), *reprinted in*, 1978 U.S. Code Cong. & Ad. News at 5787, 5835–40, 6295–96. For example, a mortgage secures both the outstanding principal of the debt, with interest due thereon, and any additional expenses incurred by the mortgagee to protect the value of its security interest. *Grady v. Utica Mut. Ins. Co.*, 419 N.Y.S.2d 565, 570, 69 A.D.2d 668 (2d Dept.1979). Where the mortgagor is in default and its mortgagee commences a foreclosure action, the security interest created by the mortgage further extends to secure the costs and disbursements of foreclosure. *Id.* In this instance, under the *American Mariner* analysis, lost opportunity cost compensation would be warranted to reflect the full extent of a mortgagee's security interest where it has commenced foreclosure prior to bankruptcy. However, adequate protection does not compensate a creditor for the loss of a better business investment opportunity. *In re Island Helicopter Corp.* at 819.

A case-by-case analysis of adequate protection that considers compensation for lost opportunity cost appears to encourage litigation rather than out-of-court settlement. A creditor that initially negotiates with the debtor to forestall bankruptcy risks placing itself in a worse position under the Code than a creditor that

commences foreclosure and instigates the bankruptcy filing. Furthermore, secured creditors can be inequitably treated where one creditor seeks adequate protection under Section 363(e) only. A grant of compensation for lost opportunity cost under that section enables a creditor to effectuate the objectives of foreclosure and yet obfuscate the statutory prerequisites to commence foreclosure under Section 362(d). This court resolves that Congress intended, and equity requires, adequate protection to solely protect the value of the creditor's allowed secured claim. Accordingly, Trust will be afforded adequate protection only to ensure against the diminution of the value of its collateral.

Trust also asserts its security interest in the collateral to preclude the debtor's use of insurance proceeds that the debtor received on insurance policies for that collateral which has been destroyed. Trust argues that these proceeds are cash collateral that the debtor cannot use without Trust's consent or, in the alternative, unless the debtor provides Trust with additional adequate protection. The debtor counters that Trust has no interest in these proceeds since Trust failed to file, with the FAA, the security agreements upon which Trust bases its asserted secured status. Trust never insisted that it be designated loss payee on any insurance policy the debtor procured for the collateral. The debtor therefore argues that Trust is estopped from asserting any security interest in the insurance proceeds.

■■■ Insurance policies and the derivative proceeds thereon received by the debtor are property of the debtor's estate under 11 U.S.C. § 541(a)(6). *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515 (2d Cir.1985), *In re Pied Piper Casuals, Inc.*, 50 B.R. 549, 551, 13 B.C.D. 290 (Bkrtcy.S.D.N.Y.1985). A creditor whose security interest extends to insurance proceeds is entitled to adequate protection only, and is not entitled to possession of the collateral nor the insurance proceeds thereof. *Bradt v. Woodlawn Auto Workers*, 757 F.2d at 516; *see generally*, 11 U.S.C. § 363(a). Where the debtor receives insurance proceeds post-petition, the court must determine whether the equities of the case will permit a security interest in such proceeds to survive the bankruptcy filing. 11 U.S.C. § 552(b).

■■■ As the debtor notes, the recording provisions of the Federal Aviation Act, 49 U.S.C. § 1403(a), require all transfers of title in aircraft to be evidenced by a written instrument duly recorded with the FAA. *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 2478, 76 L.Ed.2d 678 (1983). Section 1403(a) may not be invoked to invalidate an otherwise valid transfer of interest in an aircraft as between the immediate parties to the transfer. *In re Bellanca Aircraft Corp*, 56 B.R. 339, 376–78 (Bkrtcy.D.Minn.1985). This court will thus refer to applicable state law to determine whether Trust's security interest in the collateral extends to the subject insurance proceeds. *Id.* at 377.

■■■ Where a mortgagor is obligated under the terms of the security agreement to maintain an insurance policy on the collateral for the mortgagee's benefit, the mortgagee retains an equitable lien on the derivative insurance proceeds even if the mortgagee is not named as loss payee on the policy. *Nor-Shire Associates, Inc. v. Commercial U. Ins. Co.*, 270 N.Y.S.2d 38, 39, 25 A.D.2d 868 (2d Dept.1966); *accord*, *In re Moore*, 54 B.R. 781, 783 (Bkrtcy.E.D. N.C.1985). The mortgagee retains this equitable lien to the extent of its interest in the destroyed property as a consequence of the mortgagor's unperformed contract obligation to insure. *Nor-Shire Associates, Inc. v. Commercial U. Ins. Co.*, 270 N.Y. S.2d at 39. Since the obligation to insure is intended to ameliorate the mortgagee's secured status, a court may decline to enforce the equitable lien where the debt is sufficiently secured through other means. 55 Am.Jur.2d, Mortgages, § 277 at 367 (1979).

■■■ Furthermore, a security interest in proceeds from property acquired before bankruptcy extends to insurance proceeds

received by the debtor subsequent to the filing "except to any extent that the court, after notice and a hearing *and based on the equities of the case,* orders otherwise" (emphasis added). 11 U.S.C. § 552(b). Under Section 552(b), a court must strike the proper balance between the rights of a secured creditor and the rehabilitative goals of the Code. *United Virginia Bank v. Slab Fork Coal Co.,* 784 F.2d 1188, 1191 (4th Cir.1986).

■■■ The evidence adduced at this hearing demonstrates that Trust's security interests are adequately protected. The debtor has taken significant steps to maintain and upgrade the value of the helicopters. The debtor has offered Trust replacement liens on all new components purchased for and installed in the collateral, and has offered to procure insurance policies on the collateral which name Trust as loss payee. The debtor additionally proposes to grant Trust replacement liens in helicopters to be purchased with the subject insurance proceeds. The addition of new aircraft to the debtor's existing helicopter fleet will further the debtor's ability to reorganize and fund its plan of reorganization. The benefits that the debtor's estate and the general creditor body will reap from the debtor's proposed use of the insurance proceeds supersede Trust's desire to secure additional collateral. Accordingly, Trust may not assert a security interest to restrict the debtor's use of these funds.

In cognizance of the debtor's attempts to purchase a replacement helicopter for Aerospatiale N49505 and to rebuild or replace Aerospatiale N360CP and Bell N4FL, this court defers its final determination on adequate protection for an additional 60 days from the date of this decision. A hearing will be conducted at that time on the issue of adequate protection pursuant to 11 U.S.C. § 363(e). At that hearing, the debtor will be required to submit to this court a report which indicates the following:

1) the debtor has rebuilt Bell N4FL and Aerospatiale N360CP, or has given Trust replacement liens to the full extent of its security interest in these helicopters prior to destruction;

2) the debtor has obtained a replacement helicopter for Aerospatiale N49505 and has given Trust a replacement lien in the same to the full extent of its security interest in Aerospatiale N49505 prior to destruction;

3) the helicopters are being maintained in accordance with FAA standards and regulations;

4) the debtor has developed and will continue to implement a comprehensive maintenance program to ensure the constant overhaul and upgrade of the interior and exterior of the helicopters, as well as the continuous and prompt replacement of components as needed;

5) the debtor has procured hull insurance with a 5% deductible for all of the collateral, excluding the Bell helicopters, designating Trust loss payee on such policies.

This court cautions the debtor that its failure to adhere to this court's directive could necessitate a modification of the adequate protection provided Trust to the manner prescribed in Section 361(1). This court further advises the parties that at the above-stated hearing it will entertain any additional evidence that relates to whether Trust's interest in the value of the collateral continues to be adequately protected by the debtor.

SETTLE ORDER.