**In re TERRA VILLA APARTMENTS, LTD., d/b/a Cross Creek Apartments, a Florida Limited Partnership, Debtor.**

No. 87–07187.

U.S. Bankruptcy Court,
N.D. Florida.
Tallahassee Division.

June 5, 1989.

---

C. Edwin Rude, Jr., Tallahassee, Fla., for Metropolitan Life Ins. Co.

Timothy Warfel, Tallahassee, Fla., for First Federal Sav. and Loan Ass'n.

Laura Beth Farragasso, Tallahassee, Fla., for Grandland Realty Associates, Ltd.

N. Sanders Sauls, Tallahassee, Fla., for debtor.

## MEMORANDUM OPINION ON MOTION FOR ORDER AUTHORIZING DISBURSEMENT OF INSURANCE PROCEEDS

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came on to be heard upon Metropolitan Life Insurance Company's ("Met Life") motion authorizing disbursement of approximately $42,000.00 in insurance proceeds resulting from a fire at the Cross Creek Apartments (Cross Creek) in Albany, Georgia. Met Life is a secured creditor of the Debtor and the owner and holder of a first trust deed on Cross Creek.

On May 2, 1989, First Federal Savings and Loan Association of Russell County ("First Federal") filed a response objecting to Met Life's claim and seeking disbursement of said proceeds to the unsecured creditors in accordance with their priority under the Bankruptcy Code.

On May 24, 1989, Grandland Realty Associates, Ltd., a Georgia Limited Partnership (hereinafter "Grandland") filed a motion for a change of venue and response to Met Life's motion. Grandland, a secured creditor of the Debtor and current owner of Cross Creek, is seeking the insurance proceeds for use in the repair of the fire damaged apartments.

The underlying facts relevant to the resolution of which party is entitled to the insurance proceeds and proper venue may be summarized as follows:

On May 23, 1972, a trust deed between Houston Motor Lodges, Inc. (former owner of the apartment complex), and Griffith Mortgage Corporation was executed. The note covering the real estate and accompanying U.C.C. financing statement covering personal property were properly recorded. Subsequently, the note and financing statement were transferred to Met Life by assignment and were also properly recorded. The importance of this note is that it contains a provision requiring the borrower to insure the premises for the benefit of and payable to the lender.

On July 6, 1987, Terra Villa Apartments, Ltd., then owner of Cross Creek, filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Shortly thereafter, a fire damaged the apartment complex. Consequently, the debtor-in-possession and Aetna Insurance Corporation agreed on a $42,000.00 settlement to cover the loss.

On December 31, 1988, the automatic stay was lifted permitting foreclosure on Cross Creek. Grandland consummated foreclosure proceedings on February 7, 1989, and is consequently the current owner of the apartment complex. Additionally, Grandland itself is in Chapter 11 bankruptcy in the Middle District of Georgia.

### I

■ It is necessary to resolve the question of venue before the disbursement of insurance proceeds issue. Grandland contends the appropriate venue for Met Life's motion is in the Bankruptcy Court for the Middle District of Georgia. However, Grandland has not provided, nor does there appear to be a basis in law for changing the venue of a **motion**. Bankruptcy Rule 1014, in conformity with 28 U.S.C. § 1412, states, "on timely motion ... the **case** may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." (emphasis supplied). Grandland's motion for change of venue of Met Life's motion is neither a case nor proceeding under 28 U.S.C. § 1412 or Bankruptcy Rule 1014, but is merely a contested matter as provided in Bankruptcy Rule 9014. Therefore, the motion for change of venue is denied.

### II

■ Met Life contends they have a contractual right or, in the alternative, an equitable lien on certain insurance proceeds arising from a fire which caused approximately $42,000.00 at Cross Creek. The court is not persuaded that Met Life is entitled to the proceeds under the "Special Endorsement 1" to the Debtor's insurance policy with Aetna. The endorsement specifically states, "the following [four mortgagees] will receive a 30 day notice on the event of cancellation [of the policy]." Neither the insurance policy nor the endorsement indicate that any of the four listed mortgagees are entitled to any part of the insurance proceeds. Therefore, this court determines that no contractual right to the proceeds existed since Met Life was not named as loss-payee in the declarations on the insurance contract nor was said contract ever assigned to Met Life.

■ Notwithstanding the general rule that a mortgagee does not have a claim to fire insurance proceeds unless named as a loss-payee or assignment, *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 858 (5th Cir.1979), Met Life's contention that an equitable lien arose does have merit. The law of equitable liens in Georgia includes the following exception:

> [I]f a mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable

lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed.

*Id.,* (quoting *Wheeler v. Factors' and Traders' Ins. Co.,* 101 U.S. 439, 442, 25 L.Ed. 1055, 1057 (1880)). *See also* 55 Am. Jur.2d, Mortgages, § 277 at 365 (1971 & Supp.1988).

The first trust deed that Met Life now holds specifically required the mortgagor to insure the premises to the benefit of and payable to the 'mortgagee. This provision clearly falls within Georgia's equitable lien provision. Based on the foregoing, this court determines that an equitable lien did arise in favor of Met Life. But the inquiry does not stop here.

■ The relevant inquiry now becomes whether Met Life's equitable lien is avoidable by the debtor-in-possession acting as a hypothetical bona fide purchaser pursuant to § 544(a)(3) of the Bankruptcy Code and whose rights are defined under Georgia Law. *See In re Fulton Air Service, Inc.,* 777 F.2d 1521 (11th Cir.1985). Under Georgia law, "a bona fide purchaser for value without notice of an equity will not be interfered with by equity." Ga.Code Ann. § 23-1-20 (1989). However, there are two reasons why the debtor-in-possession cannot avoid Met Life's equitable lien.

First, the equitable lien did not arise until after the Chapter 11 petition was filed.

In order to give rise to an equitable lien there must be a debt, duty, or obligation owing by one person to another; **a res to which that obligation fastens, which can be identified or is described with reasonable certainty;** and an intent, express or implied, that the property serve as security for the payment of the debt or obligation.

51 Am.Jur.2d, Liens, § 24 at 162 (1970 & Supp.1988) (emphasis supplied). *See also Wheeler,* 101 U.S. at 442 (equitable lien attaches to the "money due on a policy"); *In the Matter of Rutherford,* 73 B.R. 665 (Bankr.W.D.Mo.1986) (mortgagee was entitled to an equitable lien on insurance **proceeds** which was superior to the interest of the Chapter 7 trustee acting as a hypothetical lien creditor where mortgage required the debtor to provide insurance for the benefit of the mortgagee but the debtor failed to provide such insurance). Because it is the insurance proceeds, not the insurance policy, which is the res to which Met Life's equitable lien attached, a bona fide purchaser could not possibly avoid the lien since the lien was not in existence at the time the Chapter 11 petition was filed.

■ Second, for the debtor-in-possession to rely on the powers of a bona fide purchaser to avoid an equitable lien, the debtor-in-possession must take without notice. Ga.Code Ann. § 23-1-20. The Code further provides, "notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." § 23-1-17. In *Henson v. Bridges,* 218 Ga. 6, 9, 126 S.E.2d 226, 228 (1962), the Supreme Court of Georgia held:

[O]ne claiming title to lands [as would a hypothetical bona fide purchaser in bankruptcy] is chargeable with every matter which appears in his deed, and of any matters which appear on the face of any deed, decree, or other instrument forming an essential link in the chain of instruments through which he deraigns title, and of whatever matters he would have learned by any inquiry which the recitals of those instruments made it his duty to pursue.

The court further held that it was immaterial whether the purchaser has actually seen, read, or has knowledge of the contents of such instruments. *Id.* at 10, 126 S.E.2d at 228-29. In *Hendrix v. W.R. Altman Lumber,* 145 F.2d 501, 503 (5th Cir. 1944), the appeals court, applying Georgia law, held that the appellant was informed by the reservation in his deed of the existence of a contract for the removal of timber and was thus chargeable with notice of the terms of such contract.

Similarly, a bona fide purchaser in this case would have constructive notice of the mortgagor's duty to insure the premises for the benefit of and payable to the mortgagee since the trust deed was recorded

and the instrument is in the chain of title. In a case with similar facts and similar state law, the Eastern District Bankruptcy Court of North Carolina held that the obligation on the part of the debtors to provide insurance was a conspicuous part of the recorded instruments and any purchaser of the real property had notice and would take subject to the instrument and obligations contained therein. *In re Moore*, 54 B.R. 781, 784 (Bankr.E.D.N.C.1985). The court went on to hold that the mortgagee had priority over the debtor-in-possession in the Chapter 11 bankruptcy. *Id.* The only cases within the Eleventh Circuit holding for the trustee or debtor-in-possession and against the creditor, all have in common that no lien was recorded and, therefore, the trustee or debtor-in-possession did not take with notice. *See Fulton*, 777 F.2d at 1523 (Chapter 11 trustee in bankruptcy, as a bona fide purchaser, may avoid unrecorded state tax liens); *In re Consolidated Southeastern Group, Inc.*, 75 B.R. 102, 104 (Bankr.N.D.Ga.1987) (Chapter 11 debtor-in-possession, acting as a bona fide purchaser, may avoid unrecorded city utility tax liens); *In re Jenkins*, 74 B.R. 440, 449 (Bankr.N.D.Ga.1987) (Chapter 11 debtor-in-possession as bona fide purchaser could avoid any unrecorded restrictive covenants).

Finally, First Federal's reliance on *In re OPM Leasing Services, Inc.*, 23 B.R. 104 (Bankr.N.Y.1982) (equitable lien will not be upheld where all available means of perfecting the lien were not employed) is not persuasive. In *OPM Leasing*, the court held that no security interest was ever meant to be created and even if there was a security interest, no financing statement was ever recorded, thus third parties would not have notice of the secret lien. *Id.* at 116–17. This court finds the facts in this case more analogous to the facts in *Rutherford*, 73 B.R. at 668–69 (it is not necessary for separate perfection in insurance where a properly perfected mortgage clearly provides for the loss-payee status of the mortgagee) and in *Moore*, 54 B.R. at 784 (the recording of the deed properly perfected the equitable lien). Met Life, unlike the creditor in *OPM Leasing*, does have properly recorded instruments putting third parties on notice.

Based on the foregoing, this court determines that Met Life has an equitable lien which is perfected and not voidable by the debtor in possession. However, since the mortgagor's obligation to insure was intended to afford better security for the payment of the debt, this court declines to order the disbursement of the insurance proceeds since there is an insufficient factual basis for this court to determine whether the debt is sufficiently secured through other means. *See* 55 Am.Jur.2d, Mortgages, § 277 at 367 (1971 & Supp. 1988); *See also In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr.E.D.N.Y. 1986) ("since the obligation to insure is intended to ameliorate the mortgagee's secured status, a court may decline to enforce the equitable lien where the debt is sufficiently secured through other means").

Since the Cross Creek Apartments have been sold to Grandland through foreclosure, this court is unable to establish whether or not Met Life's interest in the insurance proceeds is adequately secured through other means. Further, the proceeds may well constitute cash collateral which Grandland may seek to use for repair of the complex in its own reorganization. Therefore, it is for the Bankruptcy Court for the Middle District of Georgia to determine whether Met Life's valid equitable lien should be enforced against Cross Creek's current owner (Grandland). Accordingly, Met Life's motion for disbursement of the proceeds is hereby denied.

DONE AND ORDERED.