**In re Larry WILSON and Tammy Wilson, Debtors.**

**United States of America, Plaintiff,**

**v.**

**Larry Wilson and Tammy Wilson, Defendants.**

**Bankruptcy No. 00–31580.**
**Adversary No. 01–7023.**

United States Bankruptcy Court,
D. North Dakota.

Nov. 5, 2001.

Shon Hastings, Fargo, ND, for Plaintiff.

Ross Espeseth, Bismarck, ND, for Defendants.

### *MEMORANDUM AND ORDER*

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding was commenced by Plaintiff United States of America, acting on behalf of the United States Department of Agriculture, Farm Service Agency, formerly known as the Farmers Home Administration, ("FSA") by Complaint filed April 30, 2001. As amended, FSA seeks a determination that it holds an equitable lien in property purchased by Debtors Larry and Tammy Wilson ("the Wilsons"). Further, FSA seeks a determination that its claim is secured to the extent of the equitable lien under section 506 of the Bankruptcy Code. By Answer filed May 25, 2001, and Amended Answer filed September 13, 2001, the Wil-

sons deny that FSA is entitled to the equitable lien it requests.

The parties agreed to submit the matter to the Court on briefs and stipulated facts. The parties also stipulated as to the legal questions involved. From the stipulated facts and the exhibits attached thereto, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

### A. Background

The Wilsons owned a ranch in McKenzie County, North Dakota, on which they had their personal residence, a single-family house. FSA held two mortgages against the real property including the house (collectively, "the ranch"), which secured a $74,489.70 debt.[1] On January 28, 1997, the Wilsons' house was destroyed by fire. The house was insured under a casualty insurance policy, under which the Wilsons filed a claim. The insurance company issued a $55,000.00 payment to cover the damages to the Wilsons' house, and the Wilsons ultimately used the $55,000.00 to purchase a new mobile home. The new mobile home is the property at issue in this proceeding.

### B. The Wilsons' Lending History with FSA

From December 5, 1985, through December 2, 1996, the Wilsons executed eleven promissory notes in favor of FSA, which FSA still owns and holds. On July 31, 1996, the Wilsons submitted to FSA an application for Farmers Home Administration services. FSA offered to consolidate the Wilsons' debt and to defer certain loan repayments. On December 2, 1996, the Wilsons' debt to FSA was consolidated into

---

1. This is the amount of the Wilsons' debt to FSA as of the date of their bankruptcy petition, October 27, 2000.

two promissory notes. FSA's claim in this proceeding represents the unpaid balance of the promissory notes. To secure the balance due and owing to FSA, the Wilsons executed two separate real estate mortgages against the ranch. The mortgages were recorded on July 15, 1993, and December 9, 1996. The property mortgaged included the Wilsons' former house which was lost to fire. The mortgages include the following term:

Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and courtesy.

The mortgages also include a covenant requiring the Wilsons:

To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

Under the mortgages, the Wilsons are required to comply with all regulations affecting the property.

### C. The Wilsons' Other Lending History

The Wilsons executed a promissory note in the amount of $60,000.00 in favor of Cecil and Lettie Wilson on January 27, 1984. On the same day, they executed a real estate mortgage in favor of Cecil and Lettie Wilson to secure the balance due and owing under the note, and the mortgage was recorded on March 6, 1985. The mortgaged property included the Wilsons' former house. On October 27, 2000, the unpaid balance on the promissory note was $60,000.00, as represented by the Wilsons' bankruptcy petition, and no payments were made toward the reduction of this debt on or after October 27, 2000.

The Wilsons also executed one or more promissory notes to AgriBank or Federal Land Bank ("AgriBank") between October 28, 1982, and June 13, 1988. The Wilsons executed a real estate mortgage in favor of AgriBank on October 28, 1982. The mortgaged property included the Wilsons' former house. With respect to the Wilsons' real property, the parties agree that the mortgage held by AgriBank was superior to the interests of FSA. As of the date of the Wilsons' bankruptcy petition, the unpaid balance of the notes in favor of AgriBank, according to the Wilsons' bankruptcy petition, was $132,134.20.

### D. The Insurance Policy and Payments for Fire Losses

Milwaukee Mutual Insurance Company ("Milwaukee Mutual") issued the casualty policy insuring the Wilsons' former house. Neither FSA nor Cecil and Lettie Wilson were named insureds in the policy, nor were they named in the mortgage clause of the policy as loss payees. AgriBank and McKenzie County Bank were named in the mortgage clause of the policy.

On May 1, 1997, after the fire destroyed their house, the Wilsons signed a sworn statement as to their losses and submitted it to Milwaukee Mutual. The statement lists the following as having an interest in

the insured property or an encumbrance thereon: Farm Credit Services, AgriBank of Grand Forks, and Farmers Home Bank of Williston. FSA was omitted. The Wilsons listed the actual cash value of their house and other personal property at the time of the loss as $97,679.00.

On April 27, 1997, Milwaukee Mutual issued a draft for $55,000.00 to cover physical damage to the Wilsons' house from the fire. On the same day, Milwaukee Mutual issued a second draft, this one for $27,500.00, to cover personal property damage from the fire. Only the $55,000.00 draft is at issue in this proceeding. Both drafts were payable to the Wilsons, AgriBank, and the McKenzie County Bank. The Wilsons did not notify FSA of the house fire or of the insurance proceeds they received for damage to the house from the fire.

### E. The Wilsons' Use of the Insurance Proceeds

On May 6, 1997, the Wilsons submitted the insurance proceeds to AgriBank and permitted the $55,000.00 payment to be deposited in an escrow account controlled by AgriBank. At that time, the Wilsons' indebtedness to AgriBank was $139,917.70. On December 3, 1997, AgriBank refunded the insurance payment, plus interest, to the Wilsons and Countryside Homes, Inc., in the amount of $56,384.00. The Wilsons used the money to purchase a 1997 Homark Royal American 28'x60' mobile home from Countryside Homes, Inc. FSA did not receive any portion of the insurance proceeds. The Wilsons did not seek or receive authorization from FSA to spend the insurance proceeds, nor was FSA notified that AgriBank released the insurance proceeds to purchase the new mobile home. The Wilsons placed their new mobile home on a parcel of real property in McKenzie County, North Dakota, described as:

A tract of land located in the SE¼SE¼ of Section 6, Township 150 North, Range 98 West of the Fifth Principal Meridian described as: Beginning at a point 1106.8 feet due North, on Section line, and 560.0 feet due West of the Southeast corner of Section 6, Township 150 North, Range 98 West to the true point of beginning: Thence South 16°31' East a distance of 151.7 feet; thence due East a distance of 250.0 feet to the point of beginning, said tract containing 0.9 acres, more or less.

The Wilsons own this real property, but it was not part of the ranch against which FSA held a mortgage.

Contemporaneous with AgriBank's refund of the insurance payment, the Wilsons granted AgriBank a UCC security interest in the new mobile home and a real estate mortgage covering the parcel of real property upon which the new mobile home was placed. Prior to executing the mortgage in favor of AgriBank, the Wilsons owned this real estate as joint tenants in fee simple free and clear of any liens or encumbrances. The Wilsons did not grant FSA or any other entity other than AgriBank a security interest or mortgage on the new mobile home or upon the real estate on which it was placed.

### F. The Sale of the Wilsons' Ranch

The fair market value of the ranch was appraised on at least four separate occasions. At the request of Farm Credit Services, the ranch was appraised by Shawn Weishaar and Steven W. Tomac on October 1, 1996. Weishaar and Tomac estimated the value of the ranch at $191,000.00. The contributory value of the Wilsons' former house was estimated at $5,280.00. At the request of FSA, the ranch was appraised by Donald D. Bintliff

on October 8, 1996. Bintliff estimated the value of the ranch at $228,000.00. The contributory value of the Wilsons' former house was estimated at $19,500.00. At the request of AgriBank, the ranch, less the Wilsons' former house, was appraised by Timothy L. Kreft on February 18, 2000. Kreft estimated the value of the ranch at $180,000.00. At the request of FSA, the ranch, less the Wilsons' former house, was appraised by G.T. Geiszler & Associates on June 30, 2000. Geiszler estimated the value of the ranch at $198,000.00.

The Wilsons' ranch, which, after the fire on January 28, 1997, did not include the Wilsons' former house, was sold pursuant to this Court's Order dated December 12, 2000. The proceeds from the sale of the ranch, in the amount of $140,000.00, were received by AgriBank and applied toward the Wilsons' debt. After repayment through the proceeds from the sale of the ranch and the retirement of AgriBank stock the Wilsons had held, the Wilsons' debt was fully satisfied, and AgriBank released its security interest and mortgage in the Wilsons' new mobile home and the real property upon which it was placed. Thus, the Wilsons currently own the new mobile home and the real property on which it was placed free and clear of any legal liens, mortgages, security interests, or encumbrances except for any applicable utility easements.

The Wilsons filed a Chapter 13 petition on October 27, 2000. As of that date, FSA had a claim against the Wilsons for $74,489.70. The case was converted to Chapter 7 on January 29, 2001. FSA commenced this adversary proceeding seeking a determination that it holds an equitable lien in the new mobile home purchased by the Wilsons with the insurance proceeds.

## II. CONCLUSIONS OF LAW

FSA argues it is entitled to an equitable lien against the new mobile home because the Wilsons covenanted to insure their former house for the benefit of FSA and breached that covenant, they converted the insurance proceeds to their own use, and they were unjustly enriched. The Wilsons raise various theories to counter FSA's asserted right to an equitable lien against the new mobile home, principally that FSA is not entitled to an equitable lien because FSA had no interest in the ranch to which an equitable lien could attach. The Wilsons also argue that the imposition of an equitable lien is inappropriate because FSA was not vigilant about its rights and because FSA could bring a cause of action against AgriBank for inappropriately receiving the proceeds from the insurance policy, providing FSA an adequate remedy at law.

### A. The Property at Issue

■ The Wilsons argue that in order for an equitable lien to be an appropriate remedy a creditor must have an interest in a debtor's property to which an equitable lien can attach and that FSA did not have an interest in their property. Specifically, the Wilsons assert that their total debt to AgriBank and Cecil and Lettie Wilson was approximately $200,000.00, which exceeded the value of the ranch, and therefore, following the fire, there being no remaining equity, there was nothing left to which FSA's lien could attach.

■ The property at issue in this proceeding is not the Wilsons' ranch, but rather, the $55,000.00 in insurance proceeds paid under the Milwaukee Mutual policy for damage to their former house as a result of the fire and the new mobile home purchased with those cash proceeds. "Where the mortgagor agrees in the mortgage to keep the buildings on the mortgaged premises insured for the benefit of the mortgagee, the insurance pro-

ceeds stand as security for the mortgage debt in lieu of the property destroyed." 4 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 65:13 (1998). FSA has an interest in the insurance proceeds in lieu of the Wilsons' destroyed house. The extent of the Wilsons' indebtedness to AgriBank or Cecil and Lettie Wilson as compared to the value of the ranch is irrelevant to this determination.

## B. Equity Considerations

### 1. Unjust Enrichment

FSA contends the Wilsons would be unjustly enriched if FSA is not granted an equitable lien against the Wilsons' new mobile home.

 Unjust enrichment is a question of law. *Struksnes v. Kevin's Plumbing & Heating, Inc.*, 1997 ND 245, ¶ 13, 572 N.W.2d 815. It is an equitable doctrine applied in the absence of a contract and used to prevent one person from being unjustly enriched at another's expense. *Schroeder v. Buchholz*, 2001 ND 36, ¶ 14, 622 N.W.2d 202. The essential element in recovering under a theory of unjust enrichment is the defendant's receipt of a benefit from the plaintiff which would be inequitable for the defendant to retain without paying for the value of the benefit. *Id.* Five elements must be established to prove unjust enrichment: an enrichment, an impoverishment, a connection between the enrichment and the impoverishment, absence of a justification for the enrichment and impoverishment, an absence of a remedy provided by law. *Id.* at ¶ 15. "A determination of unjust enrichment 'holds that a certain state of facts is contrary to equity.'" *Albrecht v. Walter*, 1997 ND 238, ¶ 23, 572 N.W.2d 809 (quoting *In re Estate of Zent*, 459 N.W.2d 795, 798 (N.D. 1990)).

██ The only element of unjust enrichment the Wilsons assert is lacking is the absence of a remedy provided by law. The Wilsons argue that FSA could bring a cause of action against AgriBank for inappropriately receiving the proceeds from the insurance policy, and, therefore, FSA has an adequate remedy at law. The Wilsons fail to acknowledge, however, that AgriBank was merely a conduit: it had custody of the insurance proceeds temporarily, but it did not ultimately retain any portion of the insurance proceeds. The Wilsons have exclusive possession of the new mobile home they purchased with the entire insurance proceeds. An action against AgriBank would be inadequate to remedy this situation, and accordingly, FSA does not have an adequate remedy at law.

The other elements of unjust enrichment are also satisfied. The Wilsons have been enriched because they presently own the new mobile home free and clear of any liens or encumbrances, whereas previously their house was subject to FSA's mortgage. FSA has been impoverished because the Wilsons' former house, against which it held a mortgage, was destroyed by fire, FSA did not receive any of the insurance proceeds, and FSA does not have a mortgage against the Wilsons' new mobile home. Clearly there is a connection between the enrichment and the impoverishment, and there is no reasonable justification for the enrichment in this case. To allow the Wilsons to keep the property they acquired with the insurance proceeds for their exclusive benefit, free and clear of any lien or encumbrance, would be contrary to equity. Accordingly, equitable relief against the Wilsons is appropriate in this case.

### 2. Equitable lien

 An equitable lien is a restitution concept imposed to prevent unjust enrich-

ment. *Schroeder v. Buchholz*, 2001 ND 36, ¶ 26, 622 N.W.2d 202 (citing Dan B. Dobbs, *Law of Remedies* § 4.3(3) (2d ed.1993)). It arises where property of one person can be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched. *Roen Land Trust v. Frederick*, 530 N.W.2d 355, 358 (N.D.1995). An equitable lien gives a claimant a security interest in property, which can then be used to satisfy a money claim. *Id.*

As a general rule, an insurance policy is a personal contract between an insurer and an insured, and therefore the mortgagee of an insured property has no interest in a policy obtained by a mortgagor in the mortgagor's name. 4 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 65:82 (1998). "However, if the mortgagor covenants to keep property insured as further security for payment of mortgage debt, the mortgagee may be entitled to an equitable lien upon the insurance proceeds, even where the policy is in the name of the mortgagor alone." *Id.* (footnote omitted); *accord Fruehauf Corp. v. Royal Exch. Assurance of Am., Inc.*, 704 F.2d 1168, 1171–72 (9th Cir.1983); *Brown v. First Nat'l Bank of Dewey*, 617 F.2d 581, 583 (10th Cir.1980); *In re Gilley*, 236 B.R. 448, 454–55 (Bankr.M.D.Fla.1999); *Pare v. Natale* (*In re Natale*), 174 B.R. 362, 365 (Bankr.D.R.I.1994); *Clemons v. Am. Cas. Co.*, 841 F.Supp. 160, 164 (D.Md. 1993); *In re Terra Villa Apartments, Ltd.*, 101 B.R. 755, 757–58 (Bankr.N.D.Fla. 1989); *Hovis v. New Hampshire Ins. Co.* (*In re Larymore*), 82 B.R. 409, 413 (Bankr.D.S.C.1987); *In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr. E.D.N.Y.1986); *Williams v. Rutherford* (*In re Rutherford*), 73 B.R. 665, 668 (Bankr.W.D.Mo.1986); *Ormond Wholesale*

*Co., Inc. v. Moore* (*In re Moore*), 54 B.R. 781, 783 (Bankr.E.D.N.C.1985); *Aztex Energy Co. v. State* (*In re Sexton*), 16 B.R. 240, 245 (Bankr.E.D.Tenn.1981). Here, it is undisputed that the Wilsons agreed to insure the property under the mortgage with FSA. Accordingly, FSA may be entitled to an equitable lien in the insurance proceeds. Because the insurance proceeds were used directly to purchase the new mobile home, by extension, FSA may be entitled to an equitable lien in the new mobile home.[2]

The Court has considered the Wilsons' other arguments and deems them to be without merit. Accordingly, FSA has an equitable lien in the mobile home purchased by the Wilsons with the insurance proceeds.

## C. *Extent of the Lien*

The Wilsons argue that the lien should only be on $5,280.00, the amount of the contributory value of their former residence to the total value of the real estate. FSA argues that the lien should extend to the entire amount of the insurance proceeds, plus interest. FSA also asks the Court to incorporate certain terms into the equitable lien.

"As a general rule, if the mortgagor covenants to keep the mortgaged property insured for the better security of the mortgagee, the latter will have an equitable lien upon the proceeds of insurance carried by the mortgagor, in case of a loss, to the extent of his or her interest in the property destroyed[.]" 4 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 65:83 (1998). The Wilsons do not cite, nor was the Court able to find, any authority supporting the proposition that the extent of an equitable lien should be

---

**2.** The Wilsons do not object to the imposition of an equitable lien against the new mobile

home under the theory that the new mobile home does not constitute insurance proceeds.

limited to the contributory value of the destroyed property to the value of the mortgaged real estate. The debt owed to FSA as of the date of the Wilsons' bankruptcy petition is $74,789.70. Thus, FSA had a $74,789.80 interest in the ranch, the originally mortgaged property, which included the Wilsons' former house. The $55,000.00 insurance payment issued for the destruction of the Wilsons' former house, plus interest, was used to purchase the Wilsons' new mobile home.

For the foregoing reasons, judgment may be entered in favor of the Plaintiff United States of America and against the Debtors Larry and Tammy Wilson as follows: FSA has an equitable lien in the Wilsons' 1997 Homark Royal American 28'x60' mobile home currently situated on a parcel of real property described as:

> A tract of land located in the SE¼SE¼ of Section 6, Township 150 North, Range 98 West of the Fifth Principal Meridian described as: Beginning at a point 1106.8 feet due North, on Section line, and 560.0 feet due West of the Southeast corner of Section 6, Township 150 North, Range 98 West to the true point of beginning: Thence South 16°31' East a distance of 151.7 feet; thence due East a distance of 250.0 feet to the point of beginning, said tract containing 0.9 acres, more or less.

The equitable lien in the Wilsons' new mobile home is in the amount of $56,384.00, the entire amount of the insurance proceeds, plus interest. Additionally, the following term is incorporated into and made a part of the equitable lien:

> Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and courtesy.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**